■ In the Matter of PEOPLE OF THE STATE OF NEW YORK, by ELIOT SPITZER, as Attorney General of the State of New York, Respondent, v TELEHUBLINK CORPORATION, Doing Business as TRIPLE GOLD BENEFITS, et al., Appellants. [756 NYS2d 285] —Mercure, J.P. Appeal from a judgment of the Supreme Court (Teresi, J.), entered October 11, 2001 in Albany County, which granted petitioner's application, in a proceeding pursuant to Executive Law § 63 (12), for, inter alia, a permanent injunction.

Respondent Telehublink Corporation, a Delaware corporation with its principal offices in Massachusetts, sold a discount benefits package to customers throughout the United States by telephone from call centers located in Montreal, Canada. Respondent Jacques Dion was the general manager of Telehublink's Canadian branch office. Dion averred before Supreme Court that he entered into a mailbox service agreement on behalf of Telehublink to receive and send mail relating to the sale of the discount benefits packages from a courier service in New York.

Telehublink's telemarketers told prospective customers that they were preapproved for a credit card and that they could receive a low-interest credit card for an advance fee of approximately $220. Instead of a credit card, however, consumers who paid the fee received credit card applications, discount coupons, a merchandise catalog card, and a credit repair manual. Although several customers attempted to obtain a refund, Telehublink initially refused to return the consumers' money. In response to consumer complaints about Telehublink's telemarketing practices, the Attorney General commenced this proceeding seeking to enjoin the corporation and Dion from engaging in fraudulent, deceptive and illegal business practices, as well as restitution, civil penalties and costs.

Supreme Court granted petitioner's application and permanently enjoined respondents from violating Executive Law § 63 (12), General Business Law article 22-A, General Obligations Law § 5-531, 16 CFR 310.0 *et seq.* and General Business Law article 28-BB, and also from engaging in telemarketing sales with consumers in New York unless a $500,000 performance bond is posted with petitioner. Moreover, the court ordered respondents to pay restitution to all aggrieved consumers and deferred petitioner's motion for civil penalties until the final accounting of the number of consumers entitled to restitution. Respondents now appeal.

A special proceeding is governed by the same standards that apply to a motion for summary judgment (*see* CPLR 409 [b]; *Matter of Port of N.Y. Auth. [62 Cortlandt St. Realty Co.]*, 18 NY2d 250, 255, *cert denied sub nom. McInnes v Port of N.Y. Auth.*, 385 US 1006). Thus, where "the petition and supporting papers contain sufficient allegations of fact to merit the relief requested and the respondents have raised no triable issues of fact by an evidentiary showing, but only assert conclusory statements in a general denial, judgment without trial is proper" (*Matter of State of New York v Daro Chartours*, 72 AD2d 872, 872). Here, petitioner submitted numerous affidavits

and complaints alleging that Telehublink's telemarketers falsely represented to consumers that they had been pre-approved for a credit card and that in exchange for a fee, they would receive a major credit card with a substantial credit limit. Instead, the consumers received only the discount benefits package. In addition, petitioner submitted Telehublink's quarterly and annual reports with the Securities and Exchange Commission indicating that Telehublink sold the discount benefits package through its Canadian telecom services operation and that sales returns on these packages during the quarter in which the consumers requested a refund were in excess of $1.5 million. Accordingly, petitioner established prima facie that Telehublink engaged in fraudulent conduct under Executive Law § 63 (12)[1] and deceptive practices under General Business Law § 349.[2]

Telehublink argues that an affidavit of its chief executive officer, Bruce Young, created triable issues of fact as to whether the telemarketers acted within their apparent or actual authority as agents. We disagree. Although Young asserted in his affidavit that Telehublink hired outside, independent telemarketers and that the corporation did not control these third parties' conduct, Telehublink failed to provide any documentary evidence supporting this claim such as, for example, contract agreements defining its relationship with the telemarketers and, thus, did not overcome petitioner's prima facie showing of entitlement to a summary disposition.

Telehublink further maintains that it created an issue of fact as to whether it was a "loan broker" under the General Obligations Law[3] and, thus, prohibited from soliciting, receiving or collecting broker fees from consumers in advance of the disbursement of loan proceeds or the extension of credit under General Obligations Law § 5-531 (2) (c). Telehublink relies upon an assertion in Young's affidavit that the corporation never received a fee in advance of obtaining credit. That unsubstantiated, self-serving assertion, which Telehublink

---

1. Executive Law § 63 (12) defines "fraud" and "fraudulent" as "any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense, false promise or unconscionable contractual provisions."

2. General Business Law § 349 (a) states that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

3. General Obligations Law § 5-531 (2) (b) defines "[l]oan broker" as "any individual, firm, corporation, or partnership who agrees for a fee to obtain a loan or credit for a consumer or to assist a consumer in obtaining a loan or credit, other than a loan or credit on real estate security."

contends also raised an issue as to whether it violated federal Telemarketing Sales Rule 16 CFR 310.4,[4] is insufficient to raise a question of fact. Similarly, Supreme Court properly determined that the conclusory claim that Telehublink provided to purchasers all relevant information about the discount benefits package did not rebut petitioner's prima facie showing that Telehublink violated 16 CFR 310.3[5] by failing to disclose and misrepresenting the nature of the restricted credit—i.e., a card to purchase merchandise from Telehublink's catalog, instead of the major credit card that was promised.

Telehublink additionally contends that petitioner does not have the authority to seek damages, restitution or civil penalties on behalf of victims who are not residents of New York. Telehublink asserts that under 15 USC § 6103 (a), General Business Law § 349 (b) and § 458-j and Executive Law § 63 (1), the Attorney General is permitted to act only on behalf of the people of New York when the interests of the residents of the state have been implicated or threatened and that the statutory violations discussed above do not implicate any interest of this state. Contrary to Telehublink's argument, however, those statutes, by their terms, do not limit petitioner's authority to seek relief on behalf of parties injured by conduct in New York merely because those parties are nonresidents (*see Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 325 ["(A) General Business Law analysis does not turn on the residency of the parties. * * * (The statute) was (not) intended to function as a per se bar to out-of-state plaintiffs' claims of deceptive acts leading to transactions within the state."]; *State of New York v Feldman*, 210 F Supp 2d 294, 303 [SD NY] ["(Executive Law § ) 63 (12) authorizes the New York Attorney General to recover for non-residents injured by wrongdoing that occurred in New York."]). Indeed, the interests of New York were implicated when Telehublink used a New York address to send and receive correspondence related to the telemarketing scheme, including the discount benefits package containing the mis-

---

4. Telemarketing Sales Rule 16 CFR 310.4 prohibits, as pertinent here, telemarketers from "[r]equesting or receiving payment of any fee or consideration in advance of obtaining a loan or other extension of credit when the seller or telemarketer has guaranteed or represented a high likelihood of success in obtaining or arranging a loan or other extension of credit for a person" (16 CFR 310.4 [a] [4]).

5. As relevant here, the Telemarketing Sales Rule also prohibits the failure to disclose, prior to a sale, and the misrepresentation of all material restrictions and limitations on the use of goods or services that are the subject of the sales offer and the misrepresentation of any material aspect of the nature or central characteristics of those goods or services (*see* 16 CFR 310.3 [a] [1] [ii]; [2] [ii], [iii]).

characterized credit card sent to the deceived consumers. New York has a vital interest in "securing an honest marketplace in which to transact business" (*State v General Motors Corp.*, 547 F Supp 703, 705-706 [SD NY]) and this interest was threatened when Telehublink used a New York address to complete the deceptive transactions at issue here. In sum, the judgment of Supreme Court with respect to Telehublink should be affirmed.

We reach a different result, however, with respect to Dion. While officers and directors of a corporation may be held liable if they participated in or had knowledge of the fraudulent or illegal activities of a corporation (*see Marine Midland Bank v Russo Produce Co.*, 50 NY2d 31, 44), petitioner concedes that employees may be held liable for a company's deceptive sales practices only if they carried out those sales practices (*see generally Matter of People v Compact Assoc.*, 22 AD2d 129, *affd* 17 NY2d 758). Here, petitioner failed to sufficiently demonstrate either that Dion was an officer or director of Telehublink or that Dion participated in the fraudulent and illegal acts alleged in the petition such that a summary determination is warranted. Although petitioner relies on a form signed by Dion as an officer of Telehublink, the Securities and Exchange Commission reports it submits do not list Dion as an officer or director of the corporation. Moreover, petitioner's proof that Dion completed a United States postal form allowing the company to use a New York address and that he wrote 14 letters to petitioner or the Better Business Bureau advising that complaining consumers either had been given a refund or had been told how to obtain a refund does not dispositively establish any fraudulent, deceptive or illegal activity on Dion's part. Accordingly, this matter should be remitted for a hearing on the issues as to whether Dion was an officer or director of Telehublink or whether he engaged in any of the fraudulent or illegal conduct alleged in the petition.

Peters, Spain, Rose and Lahtinen, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as granted the petition against respondent Jacques Dion; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.