**Andrew LEIDER, George Vuoso, and Robert Hallowell, on behalf of themselves and those similarly situated, Plaintiffs,**

v.

**Gary RALFE, Nicholas Oppenheimer, De Beers Centenary A.G., and De Beers Consolidated Mines, Ltd., Defendants.**

No. 01 Civ.3137 HB FM.

United States District Court,
S.D. New York.

Jan. 25, 2005.

Christopher Lovell, Lovell & Stewart, L.L.P., New York City, for Plaintiffs.

Brett M. Kitt, Erika C. Birg, James L. Brochin, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York City, Robert P. Parker, Paul, Weiss, Rifkind, Wharton, Washington, DC, for Defendants.

## OPINION & ORDER

BAER, District Judge.

Andrew Leider, George Vuoso, and Robert Hallowell (collectively, "plaintiffs") and *amici curiae* J. Walter Thompson Company ("JWT") and International Diamond Manufacturers' Association ("IDMA") object to Magistrate Judge Maas' most recent Report and Recommendation ("R & R").[1] For the reasons set forth below, I

---

1. *Amicus curiae* Jewelers Vigilance Committee ("JVC") does not object to the R & R, but has nonetheless submitted a lengthy letter brief to "oppose the plaintiffs' motion for

adopt the R & R in part and plaintiffs' motion to certify their state law claims is denied. Further, this matter is set down for a pre-trial conference on February 2, 2005 at 3:00 PM in order to explore and set a schedule for further proceedings, and to determine the scope of any proposed injunctive relief pursuant to plaintiffs' Wilson Tariff Act and Sherman Act claims, the only remaining claims.

## I. BACKGROUND

The facts, prior proceedings, and history of this litigation are more fully set out in the prior decisions in this matter, familiarity with which is presumed. *Leider v. Ralfe*, No. 01 Civ. 3137, 2003 U.S. Dist. LEXIS 21159 (S.D.N.Y. March 3, 2003) ("*1st R & R*"); *Leider v. Ralfe*, No. 01 Civ. 3137, 2003 WL 22339305 (S.D.N.Y. Oct. 10, 2003) ("1st Opinion"); *Leider v. Ralfe*, No. 01 Civ. 3137, 2004 WL 1773330 (S.D.N.Y. July 30, 2004) ("*2d R & R*"). Briefly, plaintiffs are residents of initiated this lawsuit against two divisions of De Beers Group and their chairman, Nicholas Oppenheimer, and managing director, Gary Ralfe (collectively, "De Beers"), in which they allege federal and state claims based on De Beers alleged price-fixing, anticompetitive conduct, and other nefarious business practices. As a result of De Beers' alleged monopoly and other allegedly deceptive practices in the diamond industry, plaintiffs contend that they and other American consumers have over-paid for diamonds and diamond jewelry, for which they seek both monetary damages and injunctive relief. De Beers defaulted and judgment was entered against the defendants on August 16, 2001 and January 15, 2003.[2]

This matter was first referred to Magistrate Judge Maas for an R & R on class certification and damages. Magistrate Judge Maas recommended that plaintiffs' motion for class certification be denied. 1st R & R, 2003 U.S. Dist. LEXIS 21159, at *3. I adopted this R & R in part and held that while plaintiffs' lacked standing to sue for monetary damages under the Wilson Tariff and Sherman Acts, their motion for class certification would be granted pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 23(b)(2) for injunctive relief under these two statutes. *1st Opinion*, 2003 WL 22339305, at *1, 9. I further ruled that plaintiffs' Donnelly Act claims could not be certified for injunctive relief and remanded this case to Magistrate Judge Maas for another R & R with respect to the question of whether plaintiffs' Lanham Act and state law claims should be certified pursuant to Fed.R.Civ.P. 23(b)(2) or (3). *Id.* at *11. Following remand, plaintiffs withdrew their Lanham Act claims.2d *R & R*, 2004 WL 1773330, at *2. In addition, several organizations were

class certification to the extent they seek certification of a Rule 23(b)(2) class to enjoin advertising of diamonds under [t]he Wilson Tariff Act and § 2 of the Sherman Act." Letter from Robert L. Begleiter to the Court of 9/15/04 at 2. This letter and the arguments asserted therein have no bearing on this Court's review of the R & R, which addresses certification of plaintiffs' state law claims. To the extent that JVC raises pertinent and reviewable issues regarding the scope of any injunctive relief ordered in connection with plaintiffs' federal claims, those arguments should be considered on remand.

2. This default was entered only with respect to "the Wilson Tariff Act (claim 1); Sections 1 and 2 of the Sherman Act (claims 2, 3, and 4); Section 43(a) of the Lanham Act (claim 5); N.Y. Gen. Bus. L. §§ 349 and 350 (claim 7); and the Donnelly Act (claim 8) ... [J]udgment was not entered on plaintiffs' claim for common-law fraud and for antitrust violations under state statutes other than New York." *1st Opinion*, 2003 WL 22339305, at *2.

granted leave to appear as *amici curiae*.[3] *Id.* In his 2d R & R, Magistrate Judge Maas recommended that this Court certify plaintiffs' N.Y. Gen Bus. Law § 349 claims pursuant to Fed.R.Civ.P. 23(b)(3).2d *R & R*, 2004 WL 1773330, at *2. He further recommended that this Court deny plaintiffs' motion to certify their Donnelly Act and N.Y. Gen. Bus. Law § 350 claims. *Id.* Both plaintiffs and the *amici* filed timely objections.

## II. DISCUSSION

### A. Standard of Review

This Court reviews an R & R for clear error, but reviews *de novo* those portions of the R & R to which a party interposes an objection. 28 U.S.C § 636(b)(1); Fed. R.Civ.P. 72(b). Here, the objections of plaintiffs and the *amici* touch on nearly every aspect of the R & R and therefore I review it *de novo* in its entirety.

### B. Donnelly Act

Plaintiffs' eighth cause of action alleges a violation of N.Y. Gen. Bus. Law § 340, more commonly known as the "Donnelly Act," which is New York's antitrust statute.[4] To support this claim, plaintiffs contend that De Beers' anticompetitive and monopolistic business practices "were undertaken and disseminated from New York" and directly and proximately caused the unlawful price inflation of diamonds and diamond jewelry for which plaintiffs seek damages. Compl. ¶¶ 85, 86. In his 2d R & R, Magistrate Judge Maas concluded that N.Y. C.P.L.R. § 901(b) barred certification of plaintiffs' Donnelly Act claim. Plaintiffs object and argue, in essence, that their Donnelly Act claims should be certified because: (1) the Donnelly Act—whose legislative history they believe supports the maintenance of class actions—should be interpreted to conform with the Sherman Act; and (2) N.Y. C.P.L.R. § 901(b) does not apply in federal court. These arguments fail because New York law firmly disallows a Donnelly Act class action by private plaintiffs and this law applies with equal force in federal court.

### 1. N.Y. C.P.L.R. § 901(b)

N.Y. C.P.L.R. § 901(b), which sets out the prerequisites for a class action suit, prohibits a class action "to recover a penalty or minimum measure of recovery created or imposed by statute," unless the statute "specifically authorizes the recovery thereof in a class action...." The Donnelly Act provides, in pertinent part, that "any person who shall sustain damages by reason of any violation of this section, *shall recover three-fold the actual damages* sustained thereby, as well as costs not exceed-

---

3. Only three of these *amici* have objected or otherwise provided this Court with submissions regarding the 2d R & R.

4. The Donnelly Act provides, in pertinent part:

> Every contract, agreement, arrangement or combination whereby
> A monopoly in the conduct of any business, trade or commerce or in the furnishing of any service in this state, is or may be established or maintained, or whereby
> Competition or the free exercise of any activity in the conduct of any business,

trade or commerce or in the furnishing of any service in this state is or may be restrained or whereby
For the purpose of establishing or maintaining any such monopoly or unlawfully interfering with the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state any business, trade or commerce or the furnishing of any service is or may be restrained, is hereby declared to be against public policy, illegal and void.
N.Y. Gen. Bus. Law § 340(1).

ing ten thousand dollars, and reasonable attorneys' fees." N.Y. Gen. Bus. Law § 340(5) (emphasis supplied). When these two statutes are read together, it is evidence that a class action cannot be maintained under the Donnelly Act. As the First Department explained, "[p]rivate persons are precluded from bringing a class action under the Donnelly Act ... because the treble damages remedy provided for in subsection 5 constitutes a 'penalty' within the meaning of CPLR 901(b)," and the Donnelly Act "does not specifically authorize recovery in a class action...." *Cox v. Microsoft Corp.*, 290 A.D.2d 206, 737 N.Y.S.2d 1, 2 (1st Dep't 2002) ("*Cox I*"[5]); *Asher v. Abbott Labs.*, 290 A.D.2d 208, 737 N.Y.S.2d 4, 4 (1st Dep't 2002) (same); *accord Giovanniello v. Hispanic Media Group USA, Inc.*, 4 Misc.3d 440, 780 N.Y.S.2d 720, 722 (2004); *Rubin v. Nine West Group, Inc.*, No. 0763/99, 1999 WL 1425364, at *4–5 (N.Y.Sup. Nov. 3, 1999); *Russo & Dubin v. Allied Maint. Corp.*, 95 Misc.2d 344, 407 N.Y.S.2d 617, 620 (1978); *Blumenthal v. Am. Soc'y of Travel Agents, Inc.*, No. 16812/76, 1977 WL 18392, at *3 (N.Y.Sup. July 5, 1977).

In so holding, the First Department "note[d] the specific authorization to bring class actions on behalf of governmental entities given to the Attorney General in General Business Law § 342–b, the absence of such specific authorization in section 340(6), and the enactment of the latter provision after two courts held that class actions could not be brought under the Donnelly Act because they are not specifically authorized." *Id.* (internal citations omitted); *Asher*, 737 N.Y.S.2d at 4 (same). Finally, the *Cox* Court reviewed the history of treble damages under New York law

to support its view that such an award is punitive in nature. *Id.* at 3.

To rebut this sound reasoning and contrary authority, plaintiffs essentially suggest that this Court disregard the decisions of the Appellate Division and instead divine how the New York Court of Appeals might come out. As an alternative, plaintiffs propose that this Court reject New York law entirely and instead follow the cases interpreting the federal antitrust statute. Obviously, neither approach is particularly appealing. While a federal judge has a lengthy job description, crystal ball gazing was, last I looked, not on the list. Further, in their zeal to certify their state claims, plaintiffs have glossed over important distinctions between federal and New York antitrust law. The New York Court of Appeals has instructed that, where possible, "the Donnelly Act—often called a "Little Sherman Act"—should generally be construed in light of Federal precedent." *Anheuser–Busch, Inc. v. Abrams*, 71 N.Y.2d 327, 335, 525 N.Y.S.2d 816, 520 N.E.2d 535 (1988). However, New York's high court "do[es] not move in lockstep with the Federal courts in [its] interpretation of antitrust law" and has recognized that interpretation of the Donnelly Act should reflect New York's own state policy. *Id.* With respect to class actions, there is such a policy difference. "Although federal courts have held that treble damages are remedial, not punitive, New York state courts have historically concluded that treble damages are punitive in nature." *Lennon v. Philip Morris Cos., Inc.*, 189 Misc.2d 577, 734 N.Y.S.2d 374, 380 (2001). This, together with the policy statement embodied in N.Y. C.P.L.R. § 901(b), forecloses any synchronous interpretation of the Donnelly and Sherman

---

**5.** This is one in a series of decisions issued in *Cox v. Microsoft Corp.* In this Opinion and Order I cite to two decisions of the First Department, as well as an intervening deci-

sion of the Supreme Court. For the sake of clarity, I will refer to these three decisions as "*Cox I*," "*Cox II*," and *Cox III* based on their order of issuance.

Acts with respect class actions. *Id.* (observing that "CPLR § 901(b) was designed to discourage ... recovery of a statutory minimum by each class member [that] results in 'annihilatory punishment.'" (McLaughlin, Practice Commentaries, McKinney's Cons.Laws of N.Y., Book 7B, CPLR C901:7, at 327–28, citing, *Vickers v. Home Fed.,* 87 Misc.2d 880, 386 N.Y.S.2d 291[ ]).) (ellipses, alteration, and citation in original).

Plaintiffs' reliance on the Donnelly Act's legislative history is equally misplaced, for it is black letter law that legislative history cannot be used to contradict the clear statutory language. Indeed, the New York Legislature has proclaimed that "omissions in a statute cannot be supplied by construction," N.Y. Stat. § 363, and further admonished that "a court cannot amend a statute by inserting words that are not there, nor will a court read into a statute a provision which the Legislature did not see fit to enact," *id.,* Comment. The directive embodied in N.Y. Stat. § 363 is particularly fitting here, given that "since enacting the Donnelly Act, the New York State Legislature has twice considered the indirect purchasers right to bring suit. Yet, no express languages in the statute, as required by CPLR § 901(b), has been adopted which authorizes the maintenance of a class action." *Lennon,* 734 N.Y.S.2d at 381. I must therefore conclude, as Magistrate Judge Maas recommended, that N.Y. C.P.L.R. § 901(b) precludes certification of plaintiffs' Donnelly Act claims.

**2. Fed.R.Civ.P. 23**

■ I further hold that N.Y. C.P.L.R. § 901(b) applies to this matter, notwithstanding plaintiffs' arguments that it should be displaced by Fed.R.Civ.P. 23 because this suit is litigated in a federal forum. To resolve the question of whether and how to apply the federal and state statutes, I start with the settled principle that "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).[6] Where it appears that a federal and a state rule may be in conflict, I must "determine whether, when fairly construed, the scope of [the federal rule] is 'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of that law." *Burlington N. R.R. Co. v. Woods,* 480 U.S. 1, 4–5, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987) (quoting *Walker v. Armco Steel Corp.,* 446 U.S. 740, 749–750, n. 9, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980)). More recently, the Supreme Court has described this inquiry as whether the "federal statute covers the point in dispute." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 27, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (explaining that the proper inquiry is not whether there is a "direct collision" between the federal and state rules, but whether "the federal statute [is] sufficiently broad to cover the point in dispute"). If the federal rule covers or controls the issue, the federal rule "must then be applied if it represents a valid exercise of Congress' rulemaking authority, which originates in the Constitution and has been bestowed on this Court by the Rules Enabling Act." *Burlington N. R.R. Co.,* 480 U.S. at 5, 107 S.Ct. 967. Of course, the Court must also take into account the fact that "[t]he Federal Rule must not 'abridge,

---

**6.** Although most often discussed in the context of diversity jurisdiction, the principles of *Erie R.R. Co.,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, apply with equal force in pendent jurisdiction cases such as this. *See United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

enlarge or modify any substantive right....'" *Id.* at 6, 107 S.Ct. 967 (quoting 28 U.S.C. § 2072).

■■■ Here, there is no collision between Fed.R.Civ.P. 23 and N.Y. C.P.L.R. § 901(b). As another court has reasoned, "Rule 23 'merely establishes the procedures for pursuing a class action in the federal courts.' *Wade v. Danek Med., Inc.*, 182 F.3d 281, 290 (4th Cir.1999). It sets forth the circumstances under which '[o]ne or more members of a class may sue or be sued as representative parties,' but makes no reference to the remedies that representative parties may seek." *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 285 (D.Mass.2004) (alteration in original) (quoting *Wade v. Danek Med., Inc.*, 182 F.3d 281, 290 (4th Cir.1999)). On the other hand, N.Y. C.P.L.R. § 901(b) prohibits class actions for certain categories of litigation absent specific statutory authorization. These two statutes address different issues and thus, as other courts have concluded, may co-exist. *E.g., United States v. Dentsply Int'l, Inc.*, Nos. Civ. A. 99–005–SLR, 99–255–SLR, 99–854–SLR, 2001 WL 624807, at *16 (D.Del. March 30, 2001) (holding that Rule 23 and § 901(b) do not conflict because "Rule 23 ... governs the manner of determining whether class certification is appropriate in federal courts [whereas] § 901(b) establishes a bar to certain claims being considered for class action treatment on a threshold level"); *accord In re Relafen Antitrust Litig.*, 221 F.R.D. at 285; *Dornberger v. Metro. Life Ins. Co.*, 182 F.R.D. 72, 84 (S.D.N.Y.1998).

Plaintiffs' reliance on *In re Bridgestone/Firestone Inc. Tires Prods. Liability Litig.*, 205 F.R.D. 503 (S.D.Ind.2001), *rev'd in part*, 288 F.3d 1012 (7th Cir.2002), is misplaced, for the state statute it addressed is simply not analogous to N.Y. C.P.L.R. § 901(b). There, the statute limited consumer actions to Michigan residents and persons injured in that state. *Id.* at 515. Thus, similar to Fed.R.Civ.P. 23, it imposed a criterion to apply at the class certification stage, which the court found to directly conflict with Fed.R.Civ.P. 23. *Id.* at 516 (M.C.P.A. § 445.911 "adds another criterion—injury or residence in Michigan—not contemplated by Rule 23's requirements of numerosity or commonality of issues"). N.Y. C.P.L.R. § 901(b), on the other hand, simply provides that suits to recover a penalty may not be maintained *at all* as a class action unless the statute so provides.

For this very reason, *Burlington N. R.R. Co.* is not the talisman that plaintiffs believe it to be. There, the Supreme Court held that Fed. R.App. P. 38, which authorizes appellate courts, in their discretion, to impose damages or costs for frivolous appeals, displaced an Alabama statute that imposed a mandatory penalty in all cases where decisions were affirmed on appeal. 480 U.S. at 7, 107 S.Ct. 967. Here, however, the rules are not the same as in *Burlington N. R.R. Co.* N.Y. C.P.L.R. § 901(b) does not *require* the maintenance of a class action. To the contrary, based on New York's long-standing policy that suits for a penalty may not be brought as a class action absent specific legislative authorization, N.Y. C.P.L.R. § 901(b) *prohibits* class actions. It thus removes a category of claims from the realm in which a federal court may exercise its discretion. Some decades ago, the application of state law—albeit decisional and not statutory—that disallowed a class action was considered to impermissibly "emasculate the court's pendent jurisdiction...." *Kristiansen v. John Mullins & Sons, Inc.*, 59 F.R.D. 99, 110 (E.D.N.Y.1973). I believe that *Erie R.R. Co.*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 and more recent Supreme Court precedent compel the precisely opposite result. *E.g., Gasperini v.*

*Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 n. 7, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) (noting that "Federal courts have interpreted the Federal Rules ... with sensitivity to important state interests and regulatory policies").

Having determined that Fed. R.Civ.P. 23 does not cover the issue addressed in N.Y. C.P.L.R. § 901(b), the final inquiry is whether N.Y. C.P.L.R. § 901(b) is a substantive or procedural rule.[7] Under *Erie,* "federal courts should obtain results substantially similar to those reached by state courts considering the same cause of action, and ... should avoid application of federal law if that application would significantly encourage forum shopping by prospective out-of-state litigants." *Morse v. Elmira Country Club,* 752 F.2d 35, 37 (2d Cir.1984).

Courts have concluded that N.Y. C.P.L.R. § 901(b) must apply in a federal forum because it would contravene both of these mandates to allow plaintiffs to recover on a class-wide basis in federal court when they are unable to do the same in state court. *E.g., In re Relafen Antitrust Litig.,* 221 F.R.D. at 285 (reasoning that a failure "to apply C.P.L.R. 901(b) would clearly encourage forum-shopping, with plaintiffs and their attorneys migrating toward federal court to obtain the 'substantial advantages' of class actions"); *Dornberger,* 182 F.R.D. at 84 (refusing to certify plaintiffs' N.Y. Ins. Law. § 4226 claims in light of N.Y. C.P.L.R. § 901(b) because "[i]t would be patently unfair to allow plaintiff an attempt at recovery in federal court for a state law claim that would be barred in state court."); *Dentsply Int'l, Inc.,* 2001 WL 624807, at *16 ("In order to ensure that the outcome of the litigation at bar

will be substantially the same ... the court shall apply N.Y. C.P.L.R. § 901(b), which precludes these New York State residents from maintaining a class action under the Donnelly Act."). These decisions are entirely consistent with *Erie* and later Supreme Court decisions with respect to the application of state law in federal courts, which hold that "there is simply no reason why, in the absence of a controlling federal rule, an action based on state law which concededly would be barred in the state courts ... should proceed through litigation to judgment in federal court solely because of the fortuity that there is diversity of citizenship between the litigants." *Walker,* 446 U.S. at 753, 100 S.Ct. 1978. This policy also holds true for cases in which state law claims are asserted via the Court's pendent jurisdiction.

Thus, the bulk of cases to address the applicability of N.Y. C.P.L.R. § 901(b) have decided that the statute is substantive and applies with equal force in federal litigation. *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81, 94–95 (S.D.N.Y.2001); *Dornberger,* 182 F.R.D. at 84; *In re Relafen Antitrust Litig.,* 221 F.R.D. at 285–86; *Dentsply Int'l, Inc.,* 2001 WL 624807, at *16; *In re Microsoft Corp. Antitrust Litig.,* 127 F.Supp.2d 702, 727 (D.Md.2001), *opinion supplemented by,* 2001 WL 137254 (D.Md. Feb. 15, 2001); *see also Noble v. 93 Univ. Place Corp.,* 224 F.R.D. 330, 341 n. 83 (S.D.N.Y.2004) ("Although the certification motion is governed by the requirements set forth under Rule 23, section 901(b) is arguably substantive and has been found to apply under similar circumstances by federal courts in this district."); *but see In re Oot,* 112 B.R. 497, 502 (Bkrtcy.N.D.N.Y.1989) (ruling that because N.Y. C.P.L.R. § 901(b) is a proce-

---

**7.** As the rules in dispute do not conflict, I need not determine whether Fed.R.Civ.P. 23 was enacted in conformity with scope of Con-

gress' authority. *Walker,* 446 U.S. at 752, 100 S.Ct. 1978.

dural rule, the court was bound to apply Fed.R.Civ.P. 23); *In re Peters,* 90 B.R. 588, 594 (same). I concur and therefore plaintiffs' Donnelly Act claims will not be certified.

## C. N.Y. Gen. Bus. §§ 349, 350

### 1. The Statutes

■ Plaintiffs' seventh cause of action alleges violations of N.Y. Gen. Bus. Law §§ 349 and 350, which respectively prohibit "deceptive acts or practices" and "false advertising" "in the conduct of any business, trade or commerce or in the furnishing of any service in this state." "To state a claim for deceptive practices under either section, a plaintiff must show: (1) that the act, practice or advertisement was consumer-oriented; (2) that the act, practice or advertisement was misleading in a material respect, and (3) that the plaintiff was injured as a result of the deceptive practice, act or advertisement." *Pelman v. McDonald's Corp.,* 237 F.Supp.2d 512, 525 (S.D.N.Y.2003) (*"Pelman I"* [8]). To aid in the interpretation of the second element, the New York Court of Appeals has instructed that a deceptive act or practice has an "objective definition," whereby deceptive acts or practices—which may be acts or omissions—are "limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995). In other words, a violation of either section requires that the defendant's conduct deceive a reasonable consumer in a material respect, work a harm to the public at large, and directly cause the plaintiff's injury. However, the plaintiff need not demonstrate that the

defendant acted intentionally or with scienter. *Id.*

■ In addition, § 350 requires—unlike § 349—that the plaintiff must demonstrate reliance on the allegedly false advertising. *Small v. Lorillard Tobacco Co., Inc.,* 252 A.D.2d 1, 679 N.Y.S.2d 593, 599 (1st Dep't 1998), *aff'd,* 94 N.Y.2d 43, 698 N.Y.S.2d 615, 720 N.E.2d 892 (1999); *see also Stutman v. Chem. Bank,* 95 N.Y.2d 24, 30, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000) (emphasizing that "reliance is *not* an element of a section 349 claim") (emphasis in original). Typically, this means that the plaintiff must "point to [a] specific advertisement or public pronouncement" upon which he or she relied. *Small,* 679 N.Y.S.2d at 600; *see also Pelman ex rel. Pelman v. McDonald's Corp.,* No. 02 Civ. 7821, 2003 WL 22052778, at *8 (S.D.N.Y. Sept. 3, 2003) (*"Pelman III"*) ("The plaintiffs' vague allegations of reliance on a 'long-term deceptive campaign' are insufficient to fulfill the reliance requirement of § 350 for otherwise unspecified advertisements.").

Lastly, the alleged deception must have occurred in New York. *Goshen v. Mutual Life Ins. Co. of N.Y.,* 98 N.Y.2d 314, 324–25, 746 N.Y.S.2d 858, 774 N.E.2d 1190 (2002) (ruling that the statutory reference to conduct "in this state" "unambiguously evinces a legislative intent to address commercial misconduct occurring within New York"). "Thus, to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York." *Id.* at 325, 746 N.Y.S.2d 858, 774 N.E.2d 1190.

■ Under § 349(h), a private plaintiff may seek injunctive relief and may recover "actual damages or fifty dollars, whichever

---

8. This is the first decision Judge Sweet issued in *Pelman v. McDonald's Corp.* In this Opinion and Order I cite to the first and third decisions and for the sake of clarity, I refer to them as *"Pelman I"* and *"Pelman III."*

is greater." This subsection also provides that the Court may award treble damages for willful or knowing violations. *Id.* As noted in the 2d *R & R*, 2004 WL 1773330, at *8, treble damages are not mandatory, and thus N.Y. C.P.L.R. § 901(b) does not bar class certification where the plaintiff—as the plaintiffs here have agreed—waives his/her right to recover the penalty. *Cox v. Microsoft Corp.*, 8 A.D.3d 39, 778 N.Y.S.2d 147, 148–49 (1st Dep't 2004) (*"Cox III"*); *Super Glue Corp. v. Avis Rent A Car Sys., Inc.*, 132 A.D.2d 604, 517 N.Y.S.2d 764, 767 (2d Dep't 1987).

### 2. Arguments and Objections [9]

As noted, Magistrate Judge Maas recommended that this Court grant plaintiffs' motion to certify their N.Y. Gen. Bus. Law § 349 claims and deny it with respect to their § 350 claims. *Amici* JWT and IDWA contend that neither claim should be certified because: (1) plaintiffs fail to allege that conduct occurred in New York; (2) plaintiffs allege anticompetitive, but not deceptive conduct, as required by § 349; (3) De Beers' ads were not false and, in any event, plaintiffs did not allege reliance, as required by § 350; and (4) even legally sufficient, the §§ 349 and 350 claims should not be certified because individual issues will predominate. I address each of these arguments *seriatim.*

First, though, I begin with a brief overview of plaintiffs' allegations with respect to their §§ 349 and 350 claims. As Magistrate Judge Maas noted, "[i]n light of De Beers' default, the Plaintiffs' properly-pleaded allegations, except insofar as they relate to damages, must be accepted as true." *2d R & R*, 2004 WL 1773330, at *6. As I read it, the thrust of plaintiffs' complaint is that De Beers' anticompetitive practices—their collusive agreements with other suppliers, restriction of the production of synthetic diamonds, and stockpiling of diamonds—artificially depleted the supply of diamonds. Simultaneously, De Beers' undertook an extensive marketing campaign, which was—as most such campaigns are—engineered to boost demand. Plaintiffs assert that these two forces in tandem caused an increase in the price of diamonds, thereby forcing plaintiffs and other Americans to overpay for their diamonds and diamond jewelry. Insofar as deception is concerned, plaintiffs charge that De Beers' anticompetitive behavior polluted the marketplace and its ads distorted the public perception about diamonds. According to plaintiffs, De Beers touted diamonds as precious, rare, and symbolic of love, when, in fact, they are commonplace and are obtained as a result of slave labor and torture. Thus, plaintiffs allege that De Beers violated §§ 349 and 350 by its "intentional manipulation and boosting of the prices of diamonds and diamond jewelry, [ ] false and misleading advertisements, omi[ssion of] material facts, and ... other misleading conduct," which directly and proximately caused plaintiffs to pay artificially inflated prices for diamonds and diamond jewelry. Compl. ¶¶ 82, 83.[10] With this overview in mind, I turn to the *amici's* arguments.

#### (a) New York Transactions

JWC and IDMA contend that alleged misconduct occurred outside of New York.

---

**9.** While JWT filed separate objections to the 2d R & R, IDWA provided this Court with copy of its brief in opposition to certification of plaintiffs' claims. Because I review the 2d R & R *de novo*, I have addressed all of these arguments.

**10.** To the extent that plaintiffs are required to allege that the individual defendant employees of De Beers had knowledge of and actually carried out the allegedly deceptive practices, *People ex rel. Spitzer v. Telehublink Corp.*, 301 A.D.2d 1006, 756 N.Y.S.2d 285, 289 (3d Dep't 2003), they have satisfied that requirement. *See* Compl. ¶¶ 13(c), (d).

Specifically, they argue that plaintiffs have not alleged that De Beers' collusive agreements with other diamond mines or sightholders occurred in New York and that plaintiffs have only conclusorily asserted that misconduct occurred in New York. The *amici* urge that De Beers' advertisements that appeared in New York are not false and that plaintiffs' purchases in this District are insufficient because they have not alleged specifics as to how these purchases are tied to the larger allegations in the complaint.

■ The New York Court of Appeals has resolved the geographic scope of N.Y. Gen. Bus. Law § 349 and held that "the transaction in which the consumer is deceived must occur in New York." *Goshen,* 98 N.Y.2d at 324, 746 N.Y.S.2d 858, 774 N.E.2d 1190. This, however, does not foreclose recovery in this suit, for it is simply impossible—nor is it required—for the *entirety* of De Beers' conduct to occur in New York, given the extent of the alleged misconduct and the international scope of the diamond industry. Here, plaintiffs have alleged, *inter alia,* that De Beers' "agreements and other U.S. conduct ... were undertaken and disseminated from New York, Compl. ¶ 85, De Beers created advertisements in this District and disseminated them throughout the U.S.," Compl. ¶ 10(a), throughout the class period, De Beers "maintained a phone number ("1–800–FOREVER" and other 1–800 phone numbers) in this District and the United States" with various employees or agents to answer and maintain said telephone numbers, Compl. ¶ 10(b)(1), and that plaintiffs purchased diamonds and diamond jewelry in New York City and incurred damages here, Compl. ¶ 12(a), (b). Those cases that have rejected § 349 claims for lack of a geographical nexus to

New York involved schemes with no tangible tie to the state. *E.g., Goshen,* 98 N.Y.2d at 324–25, 326, 746 N.Y.S.2d 858, 774 N.E.2d 1190 ("invention of a scheme or marketing strategy" in New York in and of itself is insufficient where the plaintiff received the allegedly deceptive information, made his purchase, and paid his premiums in Florida); *Mayfield v. Gen. Elec. Capital Corp.,* No. 97 Civ. 2786, 1999 WL 182586, at *10 (S.D.N.Y. March 31, 1999) (allegations that the defendant's principal place of business was in New York was insufficient where plaintiffs merely alleged that "deceptive sales may have taken place nationwide"). On the other hand, use of "a telemarketing site and even the receipt of Internet orders physically within New York State appear to form a New York locus for a transaction covered by the New York State consumer protection statutes." *Mountz v. Global Vision Prods., Inc.,* 3 Misc.3d 171, 770 N.Y.S.2d 603, 608 (2003). Thus, plaintiffs' allegations are sufficient in this regard.[11]

### (b) Section 349 Allegations

■ The *amici* go on to argue that plaintiffs have failed to allege that De Beers' practices were deceptive. As the statutory language suggests, a deceptive acts and practices claim requires the use of deception. *E.g., Goshen,* 98 N.Y.2d at 324, 746 N.Y.S.2d 858, 774 N.E.2d 1190 (holding that "the transaction in which the consumer *was deceived* must occur in New York") (emphasis supplied); *Stutman,* 95 N.Y.2d at 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (explaining that a plaintiff "must show that the defendant's *material deceptive act* caused the injury") (emphasis supplied) (internal quotation marks and citation omitted); *Oswego Laborers' Local 214 Pension Fund,* 85 N.Y.2d at 26, 623

---

11. It should also be noted that plaintiffs have limited their proposed § 349 class to persons who made their purchases in New York State.2d R & R, 2004 WL 1773330, at *9 n. 5.

N.Y.S.2d 529, 647 N.E.2d 741 (defining deceptive acts and practices as representations or omissions *"likely to mislead* a reasonable consumer acting reasonably under the circumstances") (emphasis supplied). This requirement is consistent with the § 349's purpose as set out by New York's high court: "The statute seeks to secure an honest market place where trust, and not deception, prevails." *Goshen,* 98 N.Y.2d at 323–24, 746 N.Y.S.2d 858, 774 N.E.2d 1190 (2002) (internal quotation marks and citations omitted). Thus, while the statute's reach is broad, *id.,* and its purpose remedial, *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.,* 178 F.Supp.2d 198, 231 (E.D.N.Y.2001), *rev'd in part on other grounds and question certified on other grounds,* 344 F.3d 211 (2d Cir.2003), any claim asserted thereunder must necessarily incorporate an element of mendacity. Indeed, plaintiffs concede as much in their response to the *amici'* s arguments and objections. *See* Pl. Resp. to Obj. of JWT at 4 ("Plaintiffs agree ... that deception is required under § 349."). Mere anticompetitive conduct alone will not suffice.

The statutory language itself bolsters this conclusion. N.Y. Gen. Bus. Law § 349 is patterned after the Federal Trade Commission Act ("FTCA"). *Oswego Laborers' Local 214 Pension Fund,* 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741; *see also New York v. Feldman,* 210 F.Supp.2d 294, 302 (S.D.N.Y. 2002) (noting that "[i]n large measure, New York courts have interpreted section [349] by looking to the definition of deceptive acts and practices under section 5 of the [FTCA]"). New York did not, however, adopt FTCA § 5 in its entirety, which,

in addition to "deceptive acts and practices," prohibits "[u]nfair methods of competition ... and unfair ... acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1); *see also Gaidon v. Guardian Life Ins. Co. of Am.,* 94 N.Y.2d 330, 352, 704 N.Y.S.2d 177, 725 N.E.2d 598 (1999) (Bellacosa, J., dissenting in part) ("Section 349 tracked the actions of the FTC[A] with respect to interpretation and enforcement of the [FTCA], in that agency's effort to eradicate or penalize *deceptive acts and practices* ") (emphasis supplied). As other courts and commentators have observed, this omission indicates that anticompetitive conduct that is not premised on consumer deception is not within the ambit of the statute. *In re New Motor Vehicles Canadian Export Antitrust Litig.,* 350 F.Supp.2d 160, 196–97 (D.Me.2004) ("An antitrust violation may violate section 349, but only if it is deceptive."); Peter J. Wied, Note, *Patently Unfair: State Unfair Competition Laws and Patent Enforcement,* 12 Harv. J.L. & Tech. 469, 498–99 (Winter 1999) ("[T]he omission of unfair acts from section 349 ... implies that such acts were not intended to be covered by the statute unless they were also deceptive."); Joseph Thomas Moldovan, Note, *New York Creates a Private Right of Action to Combat Consumer Fraud: Caveat Venditor,* 48 Brook. L.Rev. 509, 562–63 (1982) (surmising that the exclusion of "unfair acts or practices" was "intended to insure that the New York Act would not have application to antitrust laws").

Courts have sustained § 349 claims based on anticompetitive conduct where the antitrust allegations were imbued with a degree of subterfuge that I find lacking in this case.[12] For example, in *Cox v.*

---

**12.** Relying in *Feldman,* 210 F.Supp.2d 294, one New York court has ruled that "a general antitrust claim" is actionable under § 349, but it nevertheless dismissed the claim for

lack of standing under *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). *Ho v. Visa U.S.A., Inc.,* 3

*Microsoft Corp.*, in addition to Microsoft Corp.'s ("Microsoft") alleged monopoly in the operating and application software markets, Microsoft, *inter alia*, "secretly engineered the computer code for Microsoft's Internet Explorer ("IE") to cause a malfunction when a consumer used any browser ... other than IE ... to deceive consumers into believing that browsers ... other than IE caused the malfunction." No. 105193/00, slip op. at *3 (Sup.Ct. July 2, 2003) (*"Cox II"*). In denying Microsoft's motion to dismiss plaintiffs' § 349 claim, the New York Supreme Court noted that while "[c]ase law makes clear that, in order to constitute a violation of § 349, the anti-trust activity would have to involve deception of the consumer," Microsoft's practice with respect the engineered error was sufficiently deceptive to satisfy § 349. *Id.*, at *6. This ruling was upheld on appeal. *Cox III*, 778 N.Y.S.2d at 148. Although the First Department described the § 349 allegations in slightly broader terms to encompass also Microsoft's "secret agreements with computer manufacturers and distributors to inhibit competition and technological development," *id.*, the nub of the cause of action—secret alteration of the market—did not change. This same secretive conduct was found to constitute a § 349 violation in *Feldman*, where the defendants' anticompetitive behavior was rooted in the "secret bidding sessions" they conducted prior to the public auction to skew prices and deprive the public of a competitive marketplace. 210 F.Supp.2d at 297, 298.

Here, the difficulty plaintiffs face is that De Beers' conduct, while certainly reprehensible, was not secretive. Instead, as the *amici* note, De Beers' monopolistic practices were public knowledge, something that plaintiffs themselves recognize. *E.g.*, Compl. ¶ 1 (quoting a 1999 presentation of the De Beers' Chairman, Nicholas Oppenheimer, to Harvard Business School alumni in which he describes De Beers as "the world's ... longest-running monopoly" that has "control[ed] supply, [ ] manage[d] prices and [ ] act[ed] collusively with [its] partners") (ellipse in original), ¶¶ 2(a), (b), 36(a) (noting the existence of a U.S. Department of Justice investigation into De Beers as far back as 1945), ¶¶ 2(c), 35 (excerpting a portion of a 2001 "60 Minutes" broadcast regarding De Beers' collusive activities), ¶ 2(e) (mentioning warnings by other U.S. government officials regarding De Beers' systemic purchase and sale of "blood diamonds"), ¶ 42 (noting that United Nations investigators received information in 2001 that De Beers was buying "blood diamonds").

 Plaintiffs contend that De Beers' broad-scale manipulation and pollution of the diamond market is deceptive unto itself. I see no principled distinction between this allegation and a generic anti-trust scheme, albeit on a substantially larger scale than most. Plaintiffs cannot escape the fact that the New York has chosen not to include "unfair competition" or "unfair" practices in its consumer protection statute, language that bespeaks a significantly broader reach. *E.g.*, Moldovan, 48 Brook. L.Rev. at 562–63 (describing "unfair acts and practices" as "conduct that is offensive to public policy, immoral, unethical, oppressive, unscrupulous, or causes substantial injury"). New York's choice to limit its consumer protection statute to *deceptive* acts and practices cannot be ignored given that the Legislature amended § 349 a decade after its enactment to expand its scope to include a private right of action. *Stutman*, 95 N.Y.2d at 28, 709 N.Y.S.2d 892, 731 N.E.2d 608. It did not, however, amend the sub-

stance of a § 349 violation. As with the N.Y. C.P.L.R. § 901(b) analysis above, this Court is bound by the statutory language. N.Y. Stat. § 363 ("omissions in a statute cannot be supplied by construction"). Of course, there remains plaintiffs' contention that De Beers' advertisements were materially misleading and deceptive, an issue that I turn to next.

### (c) Section 350 Allegations

Plaintiffs allege that De Beers' advertisements were false because they promoted diamonds as rare, Compl. ¶ 34, and "inherently represent[ative of] love, beauty and our most tender emotions," *id.* ¶ 39, when, in actuality, diamonds "have little real value," *id.* ¶ 36(c), and are the product of "[s]lave labor, induced by torture," *id.* ¶ 41. Thus, plaintiffs contend "DeBeers [sic] was required to disclose in [its] advertisements the true facts and attributes of diamonds and diamond jewelry ... in order to make [its advertising campaign] not misleading." *Id.* ¶ 2(f). Magistrate Judge Maas soundly concluded that these advertisements were not false because

> even if diamonds are scarce because of De Beers' monopolistic practices, this does not make them any less "rare" in the marketplace. Similarly, even if De Beers' diamonds are so-called "blood diamonds," this does not mean that they cannot also be emblematic of love, as the large number of diamond engagement and wedding rings purchased each year plainly shows.

*2d R & R*, 2004 WL 1773330, at *9. As plaintiffs have conceded, De Beers' advertisements did not portray diamonds as *naturally* rare. *Id.* at *7. And, as I have previously noted, diamonds have a variety of connotations, among which love and beauty figure prominently. *United States v. Crawford Technical Servs.*, No. 03 Civ. 3940, 2004 WL 744670, at *1 (S.D.N.Y. April 7, 2004) ("Throughout the ages, diamonds have sparked references to the heavens, the human spirit, love, good fortune, invincibility, poison, and curses."). Plaintiffs further contend that De Beers' advertisements are false in that they fail to reveal material facts, *to wit,* De Beers' anticompetitive activity in the diamond market. With this argument, plaintiffs again collapse the distinctions between anticompetitive and deceptive conduct. If plaintiffs were correct, then every antitrust plaintiff could simply tack on a false advertising claim in every case where the defendant advertised its products, as surely many have.

While the falsity of De Beers' advertisements is a subject on which reasonable minds could differ, the fact remains that plaintiffs' false advertising claims falter on a significantly more substantial basis: plaintiffs have not alleged reliance on De Beers' advertisements. Unlike § 349, a false advertising claim pursuant to § 350 requires reliance, *Small,* 679 N.Y.S.2d at 599, and, as Magistrate Judge Maas found, "[n]owhere in the Complaint ... have the Plaintiffs alleged that the class members actually *did* rely on De Beers' [allegedly] false advertising," *2d R & R*, 2004 WL 1773330, at *9 (emphasis in original). Under New York law, "[r]eliance on defendants' misrepresentations will not be presumed where plaintiffs had a reasonable opportunity to discover the facts about the transaction beforehand by using ordinary intelligence or where a variety of factors could have influenced a class member's decision to purchase." *Small,* 679 N.Y.S.2d at 600; *see also Pelman III,* 2003 WL 22052778, at *7 (same). Instead, "[o]nly when defendants effectively controlled all the information about the transaction will the existence of misrepresentations give rise to an inference of reli-

ance without need for further proof." *Id.* (deciding that reliance upon defendants' allegedly deceptive advertising campaign, which sought to conceal the addictive properties of nicotine could not be presumed because of the "widely-available information about nicotine"); *Sabater ex rel. Santana v. Lead Indus. Ass'n, Inc.,* 183 Misc.2d 759, 704 N.Y.S.2d 800, 808 (2000) (holding that "the widely available information about the dangers of white lead pigment forecloses any presumption of reliance"). As noted, plaintiffs have admitted that De Beers' collusive behavior and dealings in "blood diamonds" were publicly known. While all of the intricacies of De Beers' complex anticompetitive strategy have not yet been unearthed, it cannot be said that plaintiffs were without an opportunity to discover De Beers' practices and the source of their diamonds. Nor is it evident, given the substantial role of diamond jewelry in our country, that De Beers' ads were the only factor that contributed to plaintiffs' purchases.

■■■ Finally, "plaintiffs do not point to any specific advertisement or public pronouncement by [De Beers] ... which was undoubtedly seen by all class members." *Small,* 679 N.Y.S.2d at 600; *see also Solomon v. Bell Atlantic Corp.,* 9 A.D.3d 49, 777 N.Y.S.2d 50, 53 (1st Dep't 2004) (reversing class certification because, *inter alia,* individual issues would predominate regarding which, if any, advertisements the class members saw and whether they were reasonably misled by such advertisements); *Carnegie v. H & R Block, Inc.,* 269 A.D.2d 145, 703 N.Y.S.2d 27, 29 (1st Dep't 2000) (reversing class certification because, *inter alia,* individuals issues predominated with respect to which oral communications or advertisements putative class members relied upon that allegedly induced them to obtain "refund anticipation loans" from the defendant); *Strauss v.*

*Long Island Sports, Inc.,* 60 A.D.2d 501, 401 N.Y.S.2d 233, 235 (2d Dep't 1978) (reversing class certification because, *inter alia,* individual issues of the plaintiffs' reliance on advertisements would predominate). Plaintiffs' proposed method to determine whether class members relied on advertisements—to send a short interrogatory to each class member—is unwieldly and implicates an abundance of individual issues, not to mention the potential for fraud. Moreover, it is entirely unclear that this Court should certify a class only then to conduct discovery to determine if such certification is appropriate. In sum, plaintiffs have not alleged reliance upon De Beers' ads and that deficiency cannot be cured at this juncture. Consequently, plaintiffs' seventh cause of action in which they allege violations of N.Y. Gen. Bus. Law §§ 349 and 350 fails for lack of actionable deception and thus cannot be certified. a class only then to conduct discovery to determine if such certification is appropriate. In sum, plaintiffs have not alleged reliance upon De Beers' ads and that deficiency cannot be cured at this juncture. Consequently, plaintiffs' seventh cause of action in which they allege violations of N.Y. Gen. Bus. Law §§ 349 and 350 fails for lack of actionable deception and thus cannot be certified.

### (d) Class Certification

As I have concluded that plaintiffs have not stated a legally cognizable consumer protection claims, I need not reach the issue of the certifiability. In passing, however, I note that there are significant barriers to class certification. Most prominently, plaintiffs have not proffered a feasible method of damage calculation that is based on something more than conjecture and would have uniform application so that individual issues with respect to damages do not predominate. These formidable hurdles to the contrary notwith-

standing, one cannot but be concerned about these long-standing allegations and the more so as a consequence of news reports of a De Beers retail store soon to open in the U.S.

## III. CONCLUSION

For the foregoing reasons, Magistrate Judge Maas' second R & R is adopted in part and plaintiffs' motion to certify their state law claims is denied. As the deficiencies with respect to plaintiffs' N.Y. Gen. Bus. Law §§ 349 and 350 claims are similarly fatal in the context of an individual suit, these claims are dismissed. This matter is set down for a pre-trial conference on February 2, 2005 at 3:00 PM in chambers. The Clerk of the Court is instructed to close this motion.

**SO ORDERED.**