**Joseph EBIN, Yeruchum Jenkins, et al., Plaintiffs,**

v.

**KANGADIS FOOD INC. d/b/a The Gourmet Factory, Defendant.**

No. 13 Civ. 2311 (JSR).

United States District Court, S.D. New York.

Feb. 25, 2014.

Order Denying Stay March 24, 2014.

---

Joseph Ignatius Marchese, Neal Jamison Deckant, Scott A. Bursor, Yitzchak Kopel, Bursor & Fisher, P.A., New York, NY, for Plaintiffs.

Daniel Adam Schnapp, John Aubrey Wait, Fox Rothschild, Attorneys at Law, New York, NY, George J. Krueger, Gerald Arth, Fox Rothschild LLP, Philadelphia, PA, for Defendant.

## MEMORANDUM

JED S. RAKOFF, District Judge.

Lead plaintiffs Joseph Ebin and Yeruchum Jenkins bring this consumer class action against defendant Kangadis Food Inc., doing business as The Gourmet Factory ("Kangadis"), asserting numerous causes of action for breach of express warranty and breach of the implied warranty of merchantability under New Jersey law, violation of the New Jersey Consumer Fraud Act, violation of the New York General Business Law § 349, and fraud and negligent representation under New York and New Jersey law. All of plaintiffs' claims relate to Kangadis's alleged practice of selling containers of Capatriti-brand "100% Pure Olive Oil" that actually contain an industrially processed substance known as "olive-pomace oil," "olive-residue oil," or "pomace."

On November 1, 2013, plaintiffs moved pursuant to Fed.R.Civ.P. 23(b)(3) for certification of a class defined as "all persons in the United States who purchased Capatriti 100% Pure Olive Oil packed before March 1, 2013" (the "Class"). Ebin, who purchased Capatriti 100% Pure Olive Oil at a Key Food store in the Bronx, New York in August 2012, also moved to certify a subclass of class members who purchased in New York (the "New York Subclass"). Deposition of Joseph Ebin ("Ebin Dep.") at 34:11–19, 36:6–7, Declaration of Joseph Marchese dated November 1, 2013 ("Marchese Decl.") Ex. B. Jenkins, who purchased Capatriti 100% Pure Olive Oil in January 2013 at a Shop Rite in Nutley, New Jersey, seeks to represent a subclass of Class members who purchased in New Jersey (the "New Jersey Subclass"). Deposition of Yeruchum Jenkins ("Jenkins Dep.") at 41:17–42:11, 83:11–12, Marchese Decl. Ex. A. After full briefing, the Court heard oral argument on Wednesday December 4, 2013, and issued a "bottom line" Order on December 11, 2013 granting plaintiffs' motion. This Memorandum explains the reasons for that ruling.

The pertinent facts are as follows. Kangadis is a food import and distribution company formed in 2003. Complaint ¶ 10. Since 2006, Kangadis has sold, under the brand name Capatriti, a product labeled "100% Pure Olive Oil." *Id.* Plaintiffs allege that the oil contained in Capatriti containers is not in fact olive oil, but pomace. Plaintiff Ebin allegedly purchased a 101 fluid ounce container of this product at a local grocery store in Bronx County, New York in "late 2012" for "approximate $16.49." *Id.* ¶ 8. Plaintiff Jenkins also allegedly purchased a container of Capatriti "100% Pure Olive Oil," though the complaint does not allege in what volume or what price he paid. *Id.* ¶ 9. The two plaintiffs allegedly saw the labeling of the product, understood it as a representation that the product consisted of 100% pure olive oil, and would not have gone through with their respective purchases if they had known that the product was not 100% pure olive oil. The plaintiffs also allegedly "understood that in making the sale, the retailer was acting with the knowledge and approval of [Kangadis] and/or as the agent of [Kangadis]." *Id.* ¶¶ 8–9.

The complaint references an expert report by Professor Lanfranco Conte, regarding the chemical properties of the product Kangadis sells as "100% Pure Olive Oil." The Conte Report explains that pomace is fundamentally different from what is commonly known as "olive oil." As Conte explains, what consumers generally know of as "olive oil" comes from olives that are harvested, quickly carried to a mill, washed, crushed, and spun to separate out excess water. Conte Report ¶¶ 9–14. This process is entirely mechanical, and involves no heat or chemicals. *Id.* ¶ 12. The product resulting from this process is commonly called "virgin olive oil." *Id.* ¶¶ 15–

17. If "virgin olive oil" undergoes refining to remove impurities, then it is no longer called "virgin," but remains "olive oil." Pomace, by contrast, is made from the residue materials left over after all of the olive oil has been mechanically extracted from the flesh of the olives. Leftover skins and olive pits are sent to specialized facilities where they undergo superheating, bleaching, deodorizing, steaming, and treatment with industrial solvents. *Id.* ¶¶ 22, 39–40. To be made fit for human consumption, the resulting liquid must be refined to remove the solvents. *Id.* ¶ 21. Pomace's different production process makes it significantly cheaper than what is traditionally known as olive oil. The Conte Report represents that pomace typically sells in bulk quantities for 50% less than bulk refined olive oil, which is cheaper still than bulk virgin olive oil. Conte Report ¶ 24.

To qualify for certification, plaintiffs must demonstrate by a preponderance of the evidence that the putative class action meets each of the four requirements of Rule 23(a) and also satisfies at least one of the categories provided in Rule 23(b). *See In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 132–33 (2d Cir.2001). Rule 23(a) sets forth four prerequisites: numerosity, commonality, typicality, and adequacy. Fed.R.Civ.P. 23(a). The Court is satisfied that these four prerequisites are met. To begin, a presumption of numerosity attaches to classes of more than forty in the Second Circuit. *See Consol. Rail Corp. v. Hyde Park,* 47 F.3d 473, 473 (2d Cir.1995) ("[N]umerosity is presumed at a level of 40 members"). The Court has already found that the Class exceeds one hundred members in its Memorandum Order on subject matter jurisdiction, noting that "defendant does not contest that this consumer class action involves more than 100 members." *See* Memorandum Order, 5/12/13, at 3. In addition, retail sales of Capatriti during the class period were roughly $81.24 million, suggesting more than forty purchasers. Declaration of Colin Weir dated August 26, 2013 ("Weir Decl.") ¶ 16.

Commonality is met when "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). The common ques-

tions in this case are whether the pomace packed into Capatriti tins was "100% Pure Olive Oil," whether Gourmet Factory negligently misrepresented that Capatriti was "100% Pure Olive Oil," and whether Gourmet Factory defrauded purchasers by labeling Capatriti as "100% Pure Olive Oil." With respect to the New York subclass, an additional common question is whether Gourmet Factory's conduct violated New York's General Business Law § 349. With respect to the New Jersey Subclass, an additional common issue is whether Gourmet Factory breached express warranties, breached the implied warranty of merchantability, and violated the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8–1, *et seq.*

Defendant argues that the nature of the claims and the proposed class is so fractured that commonality is not possible. Capatriti was sold in at least five states, and defendant contends that a hodgepodge of standards varying among these states would preclude a common answer to the question of whether the pomace oil in Capatriti tins was 100% Pure Olive Oil. Defendant further contends that resolution of issues here will require evaluating millions of individual, unique consumer purchasing decisions at once. These arguments are unpersuasive. The commonality requirement may be met where the individual circumstances of class members differ but their "injuries derive from a unity course of conduct by a single system." *Marisol A. v. Giuliani,* 126 F.3d 372, 377 (2d Cir.1997). Here, despite the variations in state standards, the injuries being litigated all derive from the alleged misrepresentation of what is pomace as 100% Pure Olive Oil, which would arguably violate all the varying state requirements.

Typicality is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani,* 987 F.2d 931, 936 (2d Cir.1993). Here, the lead plaintiffs' and other class members' claims arise out of the same course of conduct by the defendant and are based on the same legal theories. Every tin was labeled

"100% Pure Olive Oil" and every tin in fact contained pomace. Lead plaintiffs have been injured in the same manner as other class members. *See, e.g.,* Jenkins Dep. at 41:17–22, Marchese Decl. Ex. A.; Ebin Dep. at 47:25–48:10, Marchese Decl. Ex. B. Plaintiffs furthermore seek redress through common legal claims: all class members seek redress for breach of express warranty, breach of the implied warranty of merchantability, negligent misrepresentation, and fraud. New York subclass members seek redress for violation of New York's General Business Law § 349 and New Jersey subclass members seek redress for New Jersey's Consumer Fraud Act N.J.S.A. §§ 56:8–1, *et seq.*

Defendant also argues that plaintiffs' typicality argument rests on the contention that all Capatriti tins contained pomace. However, the testimony of Themis and Dennis Kangadis suggest that when Kangadis ran out of pomace, it filled Capatriti tins with extra virgin or refined olive oil. *See* Deposition of Themis Kangadis ("Themis Kangadis Dep.") at 192:18–20; Deposition of Dennis Kangadis ("Dennis Kangadis Dep.") at 63:13–64:6. Defendant contends that the plaintiffs cannot prove whether the Capatriti purchased did in fact contain pomace and therefore cannot carry their burden of proving that their claims are typical of those of the purported class. Defendant also notes that plaintiffs never tested the Capatriti they purchased, *see* Jenkins Dep. at 145:13–15; Ebin Dep. at 50:14–20, nor do they currently possess the Capatriti that they purchased, *see* Declaration of Ryan T. Becker dated November 15, 2013 ("Becker Decl.") Ex. M. (Jenkins's Responses to Kangadis Requests for Admissions) at No. 16; Becker Decl. Ex. N (Ebin's Responses to Kangadis Requests for Admissions) at No. 16.

■ However, "[t]ypicality refers to the nature of the claim of the class representatives and not to the specific facts from which the claims arose," suggesting that whether or not the Capatriti purchased by the class representatives contained pomace is not dispositive. *Civic Ass'n of the Deaf v. Giuliani,* 915 F.Supp. 622, 633 (S.D.N.Y.1996). Additionally, plaintiffs allege that the testimony of the Kangadis brothers is allegedly not credible because it contradicts the party-admissions and their prior sworn testimony and furthermore is not supported by any documentary evidence. *See* Supp. Marchese Decl. ¶ 2 Ex. A (Themis Kangadis Dep. at 121:4–122:23). Finally, plaintiffs' testimony suggests that the Capatriti they purchased was indeed pomace, and not virgin or refined olive oil, as evidenced by its lack of taste and flavor. Under the circumstances, the Court finds the typicality requirement is met.

■ Finally, the Court finds the adequacy requirement is also met. Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). "Generally, adequacy of representation entails an inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 60 (2d Cir.2000). As for the plaintiffs, both Jenkins and Ebin have demonstrated their commitment to pursue these claims on behalf of class members by responding to extensive written discovery requests and sitting for lengthy depositions. During his deposition, Jenkins stated that he had reviewed and commented on the complaint before it was filed, Jenkins Dep. at 51:9–14, Marchese Decl. Ex. A, and that he is willing to testify at trial, *id.* at 233:4–7. Ebin testified that he is "committed" to the case and that he understands he is responsible to the class going forward. Ebin Dep. at 70:13–24, Marchese Decl. Ex. A. As for plaintiffs' counsel, Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims including claims against food manufacturers. See Bursor & Fisher, P.A. Firm Resume, Marchese Decl. Ex. M. The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008. *Id.*

■ Defendant contends that courts recognize a fifth pre-condition to class certification: the identity of class members must be

reasonably ascertainable by reference to objective criteria. *See In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir.2006) (recognizing Rule 23's "implied requirement of ascertainability"); *Stinson v. City of New York*, 282 F.R.D. 360, 373 (S.D.N.Y.2012) ("[T]he ascertainability requirement means that 'the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member' "); *Weiner v. Snapple Beverage Corp.*, No. 07–CV–8742, 2010 WL 3119452 at *12 (S.D.N.Y. Aug. 5, 2010) ("To be ascertainable the class must be readily identifiable, such that court can determine who is in the class and, thus, bound by the ruling.").

 Plaintiffs argue that the ascertainability requirement here is met. The standard for ascertainability is "not demanding" and is "designed only to prevent the certification of a class whose membership is truly indeterminable." *Gortat v. Capala Bros., Inc.*, 2010 WL 1423018, at *2 (E.D.N.Y. Apr. 9, 2010). The class and subclasses consist of persons in the United States who purchased Capatriti packed before March 1, 2013, and plaintiffs allege there is nothing subjective about that class definition. The declaration of class action administrator Steven Weisbrot proposes three ways to identify class members: (1) provide a claim form and receipt; (2) submit the unique ID stamped on each tin; and/or (3) provide a sworn affidavit identifying the particulars of the purchase. *See* Declaration of Steven Weisbrot dated November 1, 2013 ("Weisbrot Decl.") at ¶ 11. While plaintiffs acknowledge that there are some burdens to easily identifying all the class members, they maintain that retention of receipts is not an essential element for the management of a class action, or for establishing proof of injury or damages. Nor does the possibility that class members will have discarded the product render the class unascertainable.

Defendant replies that *Weiner v. Snapple Beverage Corp.* is a particularly instructive case as plaintiffs sought certification for claims of a violation of New York General Business Law § 349, unjust enrichment, and breach of warranties, alleging that they paid a premium for Snapple based on its allegedly misleading "All Natural" label. 2010 WL 3119452 at *2 (S.D.N.Y. Aug. 5, 2010). The court denied certification, finding that the ascertainability requirement was not met because plaintiffs could not prove that the class members could be ascertained by reference to objective criteria. *Id.* at *12. Plaintiffs proposed that class members could produce a receipt or product label or sign a declaration that they purchased Snapple in the class period. *Id.* at *13. The court rejected this as unrealistic as there was no basis to believe that the proposed class members would have kept such evidence and the proposed class members were also unlikely to remember details of their Snapple purchase so declarations would be unreliable. *Id.* Here as in *Snapple* plaintiffs do not point to any records that can objectively determine membership in the proposed class. Nor is it likely that consumers consistently maintain receipts of their purchase or the actual tins or bottles. Indeed, plaintiffs here have neither the Capatriti they purchased nor any receipts or documentation proving their purchases. The process described by class action administrator Steven Weisbrot to identify class members is very similar to the process found inadequate in *Snapple*. *See* Weisbrot Decl. at ¶ 11.

Although *Snapple* is not binding on this Court, it raises concerns. However, the Second Circuit has instructed that "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule." *In re Visa Check/Master-Money Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir.2001). Against this background, the Court finds that, in the end, *Snapple* goes further than this Court is prepared to go, and, indeed, would render class actions against producers almost impossible to bring. Yet the class action device, at its very core, is designed for cases like this where a large number of consumers have been defrauded but no one consumer has suffered an injury sufficiently large as to justify bringing an individual lawsuit. Against this background, the ascertainability difficulties, while formidable, should not be made into a device for defeating the action.

Rule 23(b)(3) requirements in this case are also met. Rule 23(b)(3) authorizes class certification where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R.Civ.P. 23(b)(3). "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir.2002).

Plaintiffs assert that the elements of the New York and New Jersey consumer protection claims can be established through common proof. Plaintiff Ebin alleges violations of New York General Business Law § 349 ("NYGBL") on behalf of a subclass of all members who purchased Capatriti in New York. Complaint ¶ 54. Plaintiff Jenkins alleges violations of the New Jersey Consumer Fraud Act §§ 56:8–1, *et seq.* ("NJCFA") on behalf of a subclass of all class members who purchased Capatriti in New Jersey. *Id.* ¶ 55. These claims, plaintiffs allege, involve common questions that predominate over any individual issues. Under the NJCFA, plaintiffs must establish "1) unlawful conduct by defendant[s]; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and ascertainable loss." *Bosland v. Warnock Dodge, Inc.,* 197 N.J. 543, 557, 964 A.2d 741 (2009). Elements of NYGBL § 349 are very similar to the NJCFA; section 349 defines a deceptive act or practice using an "objective definition" whereby deceptive acts or practices are "limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Leider v. Ralfe,* 387 F.Supp.2d 283, 292 (S.D.N.Y.2005). Here, every class member saw the same representation that Capatriti was "100% Pure Olive Oil" because the statement appeared in large letters on the front, back, left, right, and top of the tin. *See* Marchese Decl. Ex. N (photos of these five surfaces of the Capatriti tin). The same generalized evidence will be used to establish whether Capatriti's label is false, and if so, whether it was likely to mislead a reasonable consumer acting under the circumstances.

Defendant replies that plaintiffs cannot prove the elements of the NJCFA or NYGBL claims on a class-wide basis because a determination of whether a consumer was actually harmed by Capatriti's allegedly misleading label is individualized. While some members of the class may have purchased Capatriti because of the labeling, others may have bought Capatriti without looking at the label, because they liked they taste, because they liked the price, or because they liked the shape or color of the tin. Defendant proffers for consideration that the New Jersey Supreme Court recently considered whether to certify an NJCFA class that dealt with a prescription drug manufacturers' alleged uniform misrepresentations. *Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc.,* 192 N.J. 372, 929 A.2d 1076, 1080 (2007). The court concluded that individual reactions of the proposed class members to the drug company's advertising would predominate over common questions such as the defendant's behavior. *Id.* at 1088. With regards to NYGBL § 349, in *Vaccariello,* the court held that the proposed class of purchasers of satellite radio service whose service was automatically renewed did not satisfy the predominance requirement because any customer who wanted their subscription renewed did not suffer an actual injury and determining who fell into that category would require individual inquiry. *Vaccariello v. XM Satellite Radio, Inc.,* 295 F.R.D. 62, 74 (S.D.N.Y. 2013).

Here, the Court finds defendant's comparison to the recent New Jersey Supreme Court ruling unpersuasive; in the case of medicine, the negative impact of individual injury varies far more significantly than the injury incurred from buying an overpriced product alleging to be olive oil, which was actually pomace oil. The *Vaccariello* case in New York is also unavailing because in that case, there were individuals included in the class who did not suffer injury, whereas here, even if a class member actively wanted to buy

pomace instead of 100% pure olive oil, they nevertheless paid too much for it.

■ Plaintiffs additionally allege that the breach of express and implied warranties claims on behalf of a subclass which purchased Capatriti in New Jersey involve common questions that predominate over any individual issues that may arise. With regard to the express warranty, however, courts have found that predominance exists over claims for breach of express warranties because an "expressed promise" on the packaging "has been breached" and therefore "no individual inquiry" is "needed to resolve plaintiff's claim." *Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. 233, 250 (D.N.J. 2008). Here every tin sold to class members had a material, express promise in large letters on the front, back, left, right, and top of the tin that the contents inside were 100% Pure Olive Oil. Marchese Decl. Ex. N (photographs of five surfaces of the tin). The same evidence will determine whether the substance inside conforms to the express warranty. With regard to the breach of implied warranty of merchantability, goods that are deemed merchantable must "pass without objection in the trade under the contract description . . . [be] fit for the ordinary purposes for which such goods are used; and . . . conform to the promises or affirmations of fact made on the container or label." N.J. Stat. Ann. § 12A:2–314. Again, the same evidence will be used to determine whether this implied warranty was breached in selling the Capatriti product.

Defendant alleges that to prove either express or implied warranty claims under New Jersey law, plaintiffs must show both proximate causation and damages and a determination of whether class members suffered any damages requires an individual inquiry into the nature of their purchase. *See Marcus v. BMW of North Am., LLC*, 687 F.3d 583 (3d Cir.2012). Defendant again asserts that many class members who purchased Capatriti did so based on factors that had nothing to do with those labels and thus did not suffer any damages as a result of their purchase. Thus defendant alleges the predominance requirement of Rule 23(b)(3) is not met.

■ Plaintiffs reply, and the Court agrees, that because 100% Pure Olive Oil is the name of the product itself (and appears on all five sides of the tin), class members necessarily had to rely on it when shopping. Furthermore, where "the representations are in written and uniform materials presented to each prospective plaintiff, there is a presumption of causation in NJCFA Cases." *Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. 233, 249 (D.N.J.2008). Plaintiffs further assert, and the Court again agrees, that the common actual injury consisted of the payment of the price of olive oil for a product that was pomace oil and the associated receipt of an inferior product different from that which the consumers purchased.

■ Finally, plaintiffs allege that predominance is met for the nationwide class for plaintiffs' claims for fraud and negligent misrepresentation. The Second Circuit has held that the predominance requirement is met for claims sounding in fraud that are based on uniform representations made to all members of the class. *See Moore v. Paine-Webber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002) ("Fraud actions must . . . be separated into two categories: fraud claims based on uniform misrepresentations made to all members of the class and fraud claims based on individualized misrepresentations. The former are appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof."). Here, because defendant uniformly misrepresented its pomace oil to be 100% Pure Olive Oil to all class members, this action with its standardized misrepresentations established by generalized proof is appropriate for class certification.

Defendant contends that a nationwide class for fraud and negligent misrepresentation is not appropriate. The Southern District has found, in considering certification of a nationwide consumer class of purchasers of telecommunications products where plaintiffs asserted claims for fraud, that "a nationwide class action in which plaintiffs raise claims of fraud would require the application of the law of at least fifty jurisdictions and would make class action inappropriate." *Lewis*

*Tree Serv. Inc., et al. v. Lucent Tech., Inc.,* 211 F.R.D. 228 (S.D.N.Y.2002). Here, plaintiffs allege Capatriti was sold to distributors and retailers in at least five different states and was "stocked on supermarket shelves throughout the Northeast." Plaintiffs' Memorandum at 1. Thus, defendant alleges that the Court will need to apply the law of numerous states to decide these claims, with legal standards varying by state, ensuring that common issues do not predominate.

Plaintiffs reply and the Court agrees that New York law governs the common law claims and that even if the Court must apply the law of numerous states, common issues still predominate. *See, e.g., Maywalt v. Parker & Parsley Petroleum Co.,* 147 F.R.D. 51, 58 (S.D.N.Y.1993) (finding "application of the laws of different states, if necessary, does not preclude class action litigation."); *Elias,* 252 F.R.D. at 249–50 (D.N.J.2008) (applying forum law because defendant did not "point out or establish any difference in the laws of the various jurisdictions"). Additionally, a survey of potentially applicable state laws reveals no material difference that would affect the merits of the class's common law claims at trial; elements of the common law of fraud are sufficiently similar across jurisdictions where Capatriti was sold. *See, e.g., Gentile v. Olan,* 2013 WL 1880771, at *3 (S.D.N.Y. May 6, 2013) ("In New York, '[t]he elements of common law fraud are (1) a misrepresentation of material fact, (2) made with fraudulent intent, (3) upon which the plaintiff reasonably relies to his (4) economic detriment.'"); *Banco Popular N. Am. v. Gandi,* 184 N.J. 161, 172–73, 876 A.2d 253 (2005) (stating that to establish common-law fraud, a plaintiff must prove (1) a material misrepresentation of a presently existing or past fact, (2) knowledge or belief by the defendant of its falsity, (3) an intention that the other person rely on it, (4) reasonable reliance thereon by the other person, and (5) resulting damages); *DMG Studio Holdings, Inc. v. N. Bay S. Corp.,* 2013 WL 3992402, at *9 (D.Conn. Aug. 2, 2013) ("The essential elements of a fraud claim in the state of Connecticut are: '(1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to

induce the other party to act on it; and (4) that the latter did so act on it to his injury.'"); *Fidelity Nat. Title Ins. Co. v. Craven,* 2013 WL 3778388, at *5 (E.D.Pa. July 18, 2013) ("Under Pennsylvania law, the six elements of a common law fraud action are: (1) a misrepresentation; (2) material to the transaction; (3) made falsely; (4) with the intent of misleading another to rely on it; (5) justifiable reliance resulted; and (6) injury was proximately caused by reliance"); *Kellogg v. Wyeth,* 762 F.Supp.2d 694, 704 (D.Vt. 2010) (stating that an action for fraud under Vermont law requires an intentional misrepresentation of existing fact, affecting the essence of the transaction, so long as the misrepresentation was false when made and known to be false by the maker, was not open to the defrauded party's knowledge, and was relied on by the defrauded party to his damage).

Accordingly, for the foregoing reasons, the Court by its Order of December 11, 2013, granted plaintiffs' motion for class certification.

## MEMORANDUM ORDER

Lead plaintiffs Joseph Ebin and Yeruchum Jenkins bring this consumer class action against defendant Kangadis Food Inc., doing business as The Gourmet Factory ("Kangadis"), asserting numerous causes of action for breach of express warranty and breach of the implied warranty of merchantability under New Jersey law, violation of the New Jersey Consumer Fraud Act, violation of the New York General Business Law § 349, and fraud and negligent representation under New York and New Jersey law. All of plaintiffs' claims relate to Kangadis's alleged practice of selling containers of Capatriti-brand "100% Pure Olive Oil" that actually contain an industrially processed substance known as "olive-pomace oil" or "pomace."

■ On November 1, 2013, plaintiffs moved pursuant to Fed.R.Civ.P. 23(b)(3) for class certification. After full briefing, the Court heard oral argument on Wednesday December 4, 2013, and issued a "bottom line" Order on December 11, 2013, granting plaintiffs' motion, followed by a full Memorandum

Order on February 25, 2014 delineating the reasons for its decision. Defendant's motion for partial reconsideration of the Class Notice was also denied. See Memorandum Order, March 19, 2014. Defendant now moves to stay this action pending resolution of Kangadis's Petition (to the Second Circuit) for Permission to Appeal this Court's order granting class certification.

 The Second Circuit identifies four factors to consider when reviewing a motion to stay pending appeal:

> (1) [W]hether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*In re World Trade Center Disaster Site Litig.,* 503 F.3d 167, 170 (2d Cir.2007) (quoting *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987)).

Regarding the first factor, defendant contends that it is likely to succeed on the merits because this Court's February 25 Memorandum Order failed to cite, or grapple with, the Supreme Court's decision *Wal-Mart Stores, Inc. v. Dukes,* — U.S. —, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). Like every federal judge, this Court is well aware of *Dukes,* but the Court saw no need to cite Dukes in its February 25 opinion because it had no bearing on the instant certification dispute. *Dukes,* which dealt with the requirement of Rule 23(a)(2) that "there are questions of law or fact common to the class," specifies that rote recitation of common questions is not enough to obtain class certification, but that, rather, "commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes,* 131 S.Ct. at 2551. Here, the injury alleged as to all class members is that they were misled into believing that its product Capatriti consisted of "100% Pure Olive Oil," when, in fact, it consisted of pomace. This alleged misrepresentation—going to the very essence of what was being purchased—easily meets the Dukes requirement that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes,* 131 S.Ct. at 2545. Accordingly, the Court saw no reason to raise a *"Dukes"* issue in its February 25 decision.

Instead, so far as commonality is concerned, the Court focused on defendant's argument that standards for what constitutes olive oil vary across states, an argument the Court rejected because there also exist national and international olive oil standards promulgated by the Food and Drug Administration, the United States Department of Agriculture, and the International Olive Council, and furthermore because the critical question is whether pomace qualifies as what consumers reasonably *perceive* to be "100 Pure Olive Oil." *See, e.g.,* Olive Oil; Termination of Consideration of Codex Standard, 47 Fed.Reg. 42,123 (Sept. 24, 1984); 7 C.F.R. § 52.1535; IOC Trade Standard Applying to Olive Oils and Olive–Pomace Oils, COI/T.15/NC No 3/Rev.6 § 2.2 (Nov. 2011).

Defendant also contends that it will prevail on appeal on the merits because the Supreme Court requires as part of the "predominance inquiry," *see* Rule 23(b)(3), that plaintiffs put forth a workable damages model capable of being measured class-wide, *see, e.g., Comcast Corp. v. Behrend,* — U.S. —, — – —, 133 S.Ct. 1426, 1429–30, 185 L.Ed.2d 515 (2013), whereas here, defendant contends, individualized mini-trials must be held to determine each class member's actual damages in their purchase of Capatriti. However, as the Court stated in its February 25, 2014 Memorandum Order at 2–3, "[t]he report of damages expert Colin Weir details several models for calculating damages for this alleged misrepresentation, based on three relevant numbers: the average price of 100% pure olive oil, the average price of pomace advertised as such (non-Capatriti), and the average price of Capatriti.... The "Benefit of the Bargain" model calculates damages based on the cash difference between the price of the product that was advertised, here 100% pure olive oil, and what was received, here the price of pomace that should have been advertised as pomace. *Id.* The "Price Premium" model calculates damages as the difference between what was paid, here the price of

Capatriti, and what was received, here the price of pomace which should have been advertised as pomace." This is more than sufficient to obviate the problems of which defendant complains.

In its final argument as to the first factor for a stay, defendant contends that because this Court disagreed with *Weiner v. Snapple Beverage Corp.*, No. 07–cv–8742, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010), there now exists a split within the Second Circuit concerning Rule 23's implied "ascertainability" requirement, a pre-condition to certification closely tied to the manageability requirements of Rule 23(b)(3). *See In re Initial Public Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir.2006) (recognizing Rule 23's "implied requirement of ascertainability"). No such split exists, nor would it warrant a stay if it did exist. To be sure, the Court did indicate its disagreement with those aspects of *Snapple* discussing ascertainability that were seemingly at odds with the Second Circuit's prior indication that denial of certification on the grounds of manageability alone is disfavored. *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001), *over'd on other grounds by Brown v. Kelly*, 609 F.3d 467 (2d Cir.2010). But the heart of the *Snapple* case was a conclusion that predominance had not been shown because the submissions of plaintiff's expert on injury and damages were unreliable and had to be excluded, whereas here, as noted above, the submissions of plaintiff's expert remain intact for present purposes. The two cases are therefore plainly distinguishable.

Regarding the second factor to consider when reviewing a motion to stay pending appeal, defendant argues that it will be irreparably injured absent a stay because class certification creates pressure on the defendant to settle rather than risk a trial, regardless of the merits of the claim. But their alleged "pressure" problem, even if credited, is common to virtually all class actions, so that if it were a sufficient argument to defeat certification, virtually no class actions would ever be certified. Thus, this alleged "pressure" could not be what the Second Circuit had in mind when it created the second prong of its four prong test.

The third factor appears to be irrelevant to this particular case.

Regarding the fourth factor, defendant Kangadis argues that the public interest will be advanced by a stay, allegedly because it will conserve the resources of the Court and the parties and ensure that the judicial system operates efficiently. *See, e.g., Sutherland v. Ernst & Young LLP*, 856 F.Supp.2d 638, 643 (S.D.N.Y.2012) ("[C]onsiderations of judicial economy counsel, as a general matter, against investment of court resources in proceedings that may prove to have been unnecessary."). However, this presupposes a likelihood of success on the merits, for otherwise a stay would serve only to delay and complicate the litigation, rather than make it more efficient. Thus "courts tend to find that a stay is against the public interest where the moving party has not shown a sufficient likelihood of success on the merits." *Richards v. Ernst & Young LLP*, 2012 WL 92738 (N.D.Cal. Jan. 11, 2012). Here, as above indicated, plaintiff has a minimal chance of success on the merits.

For the foregoing reasons, three of the four factors weigh against granting a stay and the fourth factor is largely irrelevant. Accordingly, the defendant's motion to stay is hereby denied. The Clerk of the Court is ordered to close docket number 101.

SO ORDERED.