RENDELL, Circuit Judge,
concurring:
I agree with the majority that, under our current jurisprudence, the class members here are clearly ascertainable. Indeed, as Judge Smith points out, “Aaron’s own records reveal the computers upon which Detective Mode was activated, as well as the full identity of the customer who leased or purchased each of those computers.” (Maj. Op. at 169) (quoting Byrd v. Aaron’s, Inc., No. 11-cv-101, 2014 WL 1316055, at *5 (W.D.Pa. Mar. 31, 2014)). It is hard to argue otherwise, and I do not. However, I do suggest that the lengths to which the majority goes in its attempt to clarify what our requirement of ascertainability means, and to explain how this implicit requirement fits in the class certification calculus, indicate that the time has come to do away with this newly created aspect of Rule 23 in the Third Circuit. Our heightened ascertainability requirement defies clarification. Additionally, it narrows the availability of class actions in a way that the drafters of Rule 23 could not have intended.
Historically, the ascertainability inquiry related to whether the court will be able to determine who fits within the class definition for purposes of award or settlement distribution and the preclusion of the relitigation of claims.[1] It is a test that scrutinizes the class definition, and properly so.[2] But this is now only the first element of our two-part test for ascertainability. Marcus v. BMW of N. Am., LLC, 687 F.3d *173 583, 594 (3d Cir.2012); see also Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 355 (3d Cir.2013) (“The class must be defined with reference to objective criteria.”).
In 2012 we adopted a second element, namely, requiring district courts to make certain that there is “a reliable, administratively feasible” method of determining who fits into the class, thereby imposing a heightened evidentiary burden. Marcus, 687 F.3d at 594. We have precluded class certification unless there can be objective proof — beyond mere affidavits — that someone is actually a class member. Id.; accord Carrera v. Bayer Corp., 727 F.3d 300, 308-12 (3d Cir.2013). This concept has gained traction in recent years.[3] I submit that this “business record” or “paper trail” requirement is ill-advised.[4] In most low-value consumer class actions, prospective class members are unlikely to have documentary proof of purchase, because very few people keep receipts from drug stores or grocery stores. This should not be the reason to deny certification of a class.[5] As Judge Ambro’s dissent from the denial of the petition for rehearing en banc in Carr-era noted, “[wjhere a defendant’s lack of records ... make it more difficult to ascertain the members of an otherwise objectively verifiable low-value class, the consumers who make up that class should not be made to suffer.” Carrera v. Bayer Corp., No. 12-2621, 2014 WL 3887938, at *3 (3d Cir. May 2, 2014) (Ambro, J. dissenting).
Records are not the only way to prove that someone is in a class. It is the trial *174 judge’s province to determine what proof may be required at the claims submission and claims administration stage. It is up to the judge overseeing the class action to decide what she will accept as proof when approving the claim form. Could not the judge decide that, in addition to an individual’s “say so” that he is a member of the class, the claimant needs to submit an affidavit from another household member or from his doctor corroborating his assertion that he did, in fact, take Bayer aspirin? Is that not permissible and appropriate? Yet, we foreclose this process at the outset of the case by requiring that plaintiffs conjure up all the ways that they might find the evidence sufficient to approve someone as a class member.
This puts the class action cart before the horse and confuses the class certification process, as this case makes manifest. The irony of this result is that it thwarts “[t]he policy at the very core of the class action mechanism,” i.e., “to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.” Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir.1997)). Indeed, “[a] class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone’s (usually an attorney’s) labor.” Id. We have effectively thwarted small-value consumer class actions by defining ascertainability in such a way that consumer classes will necessarily fail to satisfy for lack of adequate substantiation.[6] Consumers now need to keep a receipt or a can, *175 bottle, tube, or wrapper of the offending consumer items in order to succeed in bringing a class action.
The policy rationales that we cite in support of our expanded ascertainability requirement are relatively weak when compared to the significant policy justifications that motivate the class action mechanism. We have noted three rationales for our ascertainability requirement: (1) eliminating administrative burdens “incongruous” with the efficiencies of a class action, (2) protecting absent class members’ rights to opt out by facilitating the best notice practicable, and (3) protecting the due process rights of defendants to challenge plaintiffs’ proffered evidence of harm. Marcus, 687 F.3d at 593.
Eliminating “administrative burdens” really means short-circuiting the claims process by assuming that when individuals file claims, they burden the court. But claims administration is part of every class action. Imposing a proof-of-purchase requirement does nothing to ensure the manageability of a class or the “efficiencies” of the class action mechanism; rather, it obstructs certification by assuming that hypothetical roadblocks will exist at the claims administration stage of the proceedings.[7]
Denying class certification due to concerns about providing notice to class members makes little sense. Rule 23 requires the “best notice that is practicable under the circumstances” to potential class members after a class has been certified.[8] Potential difficulties in providing individualized notice to all class members should not be a reason to deny certification of a class. As the Supreme Court noted in Phillips Petroleum Co. v. Shutts, due process is satisfied when notice is “reasonably calculated” to reach the defined class. 472 U.S. 797, 812, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). The question is not whether every class member will receive actual individual notice, but whether class members can be notified of their opt-out rights consistent with due process. See Dusenbery v. United States, 534 U.S. 161, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) (holding that due process did not require actual notice to federal prisoner of his right to contest civil forfeiture, but rather, due process must be “reasonably calculated” to apprise a party of the pendency of an action).[9]
The concerns regarding the due process rights of defendants are unwarranted as well, because there is no evidence that, in small-claims class actions, fabricated claims impose a significant harm on defendants. The chances that someone would, under penalty of perjury, sign a false affidavit stating that he or she bought Bayer aspirin for the sake of receiving a windfall of $1.59 are far-fetched at best. On the other hand, while most injured individuals will find that it is not worth the effort to claim the few dollars in damages that the class action can provide, in the aggregate, this sum. is significant enough to deter corporate misconduct. Our ascertainability doctrine, by focusing on making abso *176 lutely certain that compensation is distributed only to those individuals who were actually harmed, has ignored an equally important policy objective of class actions: deterring and punishing corporate wrongdoing. As Judge Posner, writing for the Court of Appeals for the Seventh Circuit, stated in Hughes v. Kore of Indiana Enterprise, Inc., “when what is small is not the aggregate but the individual claim ... that’s the type of case in which class action treatment is most needful.... A class action, like litigation in general, has a deterrent as well as a compensatory objective.” 731 F.3d 672, 677 (7th Cir.2013). The rigorous application of the ascertainability requirement translates into impunity for corporate defendants who have harmed large numbers of consumers in relatively modest increments.[10] Without the class action mechanism, corporations selling small-value items for which it is unlikely that consumers would keep receipts are free to engage in false advertising, overcharging, and a variety of other wrongs without consequence.
The concerns about defendants’ due process rights are also overblown because damages liability under Rule 23 is determined in the aggregate: courts determine the extent of a defendant’s monetary liability to the entire class. Therefore, whether an individual can establish membership in that class does not affect the rights of defendants not to pay in excess of their liability. Carrera’s concern that allowing undeserving individuals to claim damages will dilute deserving class members’ recoveries is unrealistic in modern day class action practice, and it makes little sense when used to justify the wholesale dooming of the small-value class action such that no injured plaintiff can recover at all. Moreover, this is an issue to be dealt with in the implementation of a class action settlement, not in conjunction with ascertaining the class for purposes of certification. Concerns about claims processing should not be used to scuttle these types of class actions altogether.
The policy concerns animating our ascertainability doctrine boil down to ensuring that there is a surefire way to get damages into the hands of only those individuals who we can be 100% certain have suffered injury, and out of the hands of those who may not have. However, by disabling plaintiffs from bringing small-value claims as a class, we have ensured that other policy goals of class actions— compensation of at least some of the injured and deterrence of wrongdoing, for example — have been lost. In small-claims class actions like Carrera, the real choice for courts is between compensating a few of the injured, on the one hand, versus compensating none while allowing corporate malfeasance to go unchecked, on the other. As such, where there are small-value claims, class actions offer the only means for achieving individual redress. As the Supreme Court stated in Eisen, when individual damages are so low, “[ejconomic reality dictates that petitioner’s suit proceed as a class action or not at all.” 417 U.S. at 161, 94 S.Ct. 2140. The *177 concern that we are defeating what is at the “core” of what the class action was designed to accomplish is very real. As Judge Rakoff noted in certifying a class over objections regarding ascertainability based on receipts or documentation:
[T]he class action device, at its very core, is designed for cases like this where a large number of consumers have been defrauded but no one consumer has suffered an injury sufficiently large as to justify bringing an individual lawsuit. Against this background, the ascertainability difficulties, while formidable, should not be made into a device for defeating the action.
Ebin v. Kangadis Food Inc., 297 F.R.D. 561, 567 (S.D.N.Y.2014). While a rigorous insistence on a proof-of-purchase requirement, which our heightened ascertainability jurisprudence has imposed, keeps damages from the uninjured, it does an equally effective job of keeping damages from the truly injured as well, and “it does so with brutal efficiency.”[11]
Therefore, while I concur in the judgment, I suggest that it is time to retreat from our heightened ascertainability requirement in favor of following the historical meaning of ascertainability under Rule 23. I would therefore reverse the District Court’s ruling, and hold that (1) hereafter, our ascertainability analysis will focus on class definition only, and (2) the District Court’s analysis regarding the second prong of our ascertainability test was unnecessary. We thus would instruct the District Court to proceed to determine whether the class can be certified under the traditional mandates of Rule 23. Until we revisit this issue as a full Court or it is addressed by the Supreme Court or the Advisory Committee on Civil Rules, we will continue to administer the ascertainability requirement in a way that contravenes the purpose of Rule 23 and, in my view, disserves the public.

. See Manual for Complex Litigation (Fourth) § 21.222 (2004) ("An identifiable class exists if its members can be ascertained by reference to objective criteria.”); Joseph M. McLaughlin, McLaughlin on Class Actions § 4:2 (11th ed.2014) ("[C]lass members need to be able to determine with certainty from a class notice whether they are in the class.... If the class definition is amorphous, persons may not recognize that they are in the class, and thus may be deprived of the opportunity to object or opt out.”); 5 James Wm. Moore et al., Moore’s Federal Practice ¶ 23.21 [1] (3d ed.1999) (noting that a class must be "susceptible to precise definition”).

. Courts have found classes to be ascertainable when the class definition is sufficiently specific. Compare Parkinson v. Hyundai Motor Am., 258 F.R.D. 580, 593 (C.D.Cal.2008) (holding that prospective plaintiffs are capable of determining whether they were class members because class definition included purchasers of a certain vehicle who paid for the replacement of a certain part in a certain time period), and Bynum v. District of Columbia, 214 F.R.D. 27, 31-32 (D.D.C.2003) (holding that prospective class members are capable of identifying themselves based on the dates of their incarceration included in the class definition), and Pigford v. Glickman, 182 *173 F.R.D. 341, 346 (D.D.C.1998) (holding that class members are capable of identifying themselves based on whether they had applied for participation in a USDA federal farm program during the specified dates), with In re Copper Antitrust Litig., 196 F.R.D. 348, 350-51, 358-60 (W.D.Wis.2000) (refusing to certify class of "[a]ll copper or metals dealers ... that purchased physical copper” during a specified time period "at prices expressly related lo LME or Comex copper future prices” because the class definition fell "far short of communicating to copper purchasers what they need to know to decide whether they are in or outside the proposed class,” in that the definition failed to explain the terms "copper or metals dealers,” "physical copper,” and “expressly related to”).

. Several courts have denied class certification on ascertainability grounds similar to our current ascertainability test. See, e.g., Randolph v. J.M. Smucker Co., 303 F.R.D. 679, 689 (S.D.Fla.2014) (denying certification of class suing defendant for mislabeling product as "All Natural” in violation of Florida’s deceptive advertising law because potential class members were unlikely to remember if they bought a product with such a label); In re Skelaxin (Metaxalone) Antitrust Litig., 299 F.R.D. 555, 572 (E.D.Tenn.2014) (denying certification of class suing drug manufacturer for violating antitrust laws because plaintiffs did not propose feasible model for screening fraudulent claims); Brey Corp. v. LQ Mgmt. LLC, No. 11-cv-718, 2014 WL 943445, at *1 (D.Md. Jan. 30, 2014) (denying certification of class suing defendant for violating antitrust laws because ascertaining who belongs in the class would require individualized fact-finding).

. While the majority cites a footnote in Carrera as standing for the proposition that we have no "records requirement,” the class in Carrera failed the ascertainability test because there were no records from which the class members could be ascertained with certainty. (Maj. Op. at 164 (citing Carrera, 727 F.3d at 308, n. 2)).

. See, e.g., McCrary v. Elations Co., LLC, No. 13-cv-242, 2014 WL 1779243, at *8 (C.D.Cal. Jan. 13, 2014) ("It appears that pursuant to Carerra [sic] in any case where the consumer does not have a verifiable record of its purchase, such as a receipt, and the manufacturer or seller does not keep a record of buyers, Carerra [sic] prohibits certification of the class.”); Ries v. Ariz. Beverages USA LLC, 287 F.R.D. 523, 535 (N.D.Cal.2012) (warning that, if lack of receipts dooms certification, "there would be no such thing as a consumer class action” in cases concerning false or deceptive labeling of small-value items).

. Small-value consumer class actions certified by district courts nationwide would not pass muster in our Circuit because of our heightened ascertainability requirement. See, e.g., Hughes v. Kore of Ind. Enter., Inc., 731 F.3d 672, 675 (7th Cir.2013) (reversing district court’s order decertifying class of consumers who brought action against owners of automatic teller machines for failing to post notice on machines that they charged fee for use despite difficulty in determining which plaintiffs would have been deceived by lack of notice); Ebin v. Kangadis Food Inc., 297 F.R.D. 561, 567 (S.D.N.Y.2014) (certifying class of consumers who claimed defendant placed misleading “All Natural” label on olive oil bottles even though plaintiffs were unlikely to have retained receipts or packaging proving membership in class); Boundas v. Abercrombie & Fitch Stores, Inc., 280 F.R.D. 408, 417 (N.D.Ill.2012) (certifying class of plaintiffs who possessed promotional gift cards stating “No expiration date” that were voided by defendant or told that the cards had expired or been voided and thrown away cards even though some class members would only be able to claim class membership through affidavit); see also Lilly v. Jamba Juice Co., No. 13-cv-2998, 2014 WL 4652283, at *4 (N.D.Cal. Sept. 18, 2014) (certifying class of consumers who purchased frozen smoothie kits containing label “All Natural” where product allegedly contained various artificial ingredients and where consumers did not necessarily have proof of purchase); Allen v. Hyland’s, Inc., 300 F.R.D. 643, 658-59, 672 (C.D.Cal.2014) (certifying class of plaintiffs who purchased homeopathic products where packaging contained alleged misrepresentations even though class members would have to self-identify without corroborating evidence); Forcellati v. Hyland’s, Inc., No. 12-1983, 2014 WL 1410264, at *5, *13 (C.D.Cal. Apr. 9, 2014) (certifying class of plaintiffs who purchased children’s cold or flu products within a prescribed time frame despite purchasers’ lack of proof of purchase and defendants’ lack of records identifying consumers who purchased their products via retail intermediaries); McCrary, 2014 WL 1779243, at *7-8 (certifying class of purchasers of dietary joint supplement containing allegedly deceptive label despite plaintiffs' lack of proof of purchase); Astiana v. Kashi Co., 291 F.R.D. 493, 500 (S.D.Cal.2013) (certifying class of consumers who purchased cereal and snack products labeled as "All Natural” or “Nothing Artificial” but which allegedly contained synthetic ingredients in violation of various false advertising laws even though plaintiffs unlikely to have retained receipts or containers); Ries, 287 F.R.D. at 535 (certifying class of *175 consumers who purchased iced tea with ''natural'' on label despite plaintiffs' lack of proofs of purchase, finding self-identification sufficient for ascertainability).

. See Carnegie v. Household Int’l, Inc., 376 F.3d 656, 661 (7th Cir.2004) ("T]here is a big difference from the standpoint of manageability between the liability and remedy phases of a class action.”).

. Fed.R.Civ.P. 23(c)(2)(B).

. See also Girsh v. Jepson, 521 F.2d 153, 159 n. 12 (3d Cir.1975) ("We do not mean to indicate that individual notice must be given in all cases.”). Furthermore, Rule 23 requires courts to provide the best practicable notice after a class has been certified. See Fed.R.Civ.P. 23(c)(2)(B).

. As one court has noted,
[a]dopting the Carrera approach would have significant negative ramifications for the ability to obtain redress for consumer injuries. New people retain receipts for low-priced goods, since there is little possibility they will need to later verify that they made the purchase. Yet it is precisely in circumstances like these, where the injury to any individual consumer is small, but the cumulative injury to consumers as a group is substantial, that the class action mechanism provides one of its most important social benefits.
Lilly, 2014 WL 4652283, at *4 (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 161, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)).

. Myriam Gilíes, Class Dismissed: Contemporary Judicial Hostility to Small-Claims Consumer Class Actions, 59 DePaul L.Rev. 305, 308 (2010).