MARTIN, Circuit Judge,
concurring:
The vehicle of the class action was intended to “vindicate] ... the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.” Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617, 117 S.Ct. 2231, 2246, 138 L.Ed.2d 689 (1997) (citations omitted). Today’s majority denies relief based on the court-created doctrine of ascertainability, which, as a principle, could erode this purpose. Some courts have held that a prospective class of consumers of a small-dollar product is not ascertainable if the only way they can be identified is through self-identification. Though the facts of this case present this court with no opportunity to join those, I write separately to address the problems with such a holding. Specifically, self-identification can and should be a sufficient means of ascertaining a class, particularly for a class of consumers of a cheap and unique product like the one at issue here. I therefore reject the District Court’s reasoning and its potential implications. However, because I agree with the majority that Mr. Karhu failed to sufficiently make a self-identification argument at the class-certification stage, I concur in the judgment.
I.
Vital Pharmaceuticals, Inc. (VPX) is a Florida corporation that manufactures, advertises, and sells a dietary supplement, modestly^ named “VPX Meltdown Fat Incinerator” (Meltdown). VPX advertises, also modestly, that Meltdown “burns fat for 6 + hours” by causing a “29% thermo-genic increase” and a “56% increase in fat utilization.” Adam Karhu, a New York resident who purchased Meltdown, sued VPX, claiming that Meltdown is not effective for this advertised purpose.
Mr. Karhu filed his suit as a class action. He moved pursuant to Federal Rule of Civil Procedure 23(b)(3) for certification of a class defined as “all persons in the United States who purchased Meltdown from April 4, 2008 to date” as well as a subclass of “all Class members who purchased the product in New York.” He asserted claims on behalf of the nationwide class for (1) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-12; (2) breach of express warranty; (3) unjust enrichment; and (4) violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-13. He also asserted a claim on behalf of only the New York subclass for violations of New York General Business Law § 349.
The District Court denied Mr. Karhu’s request for class certification primarily because it concluded that the members of Mr. Karhu’s proposed classes were not ascertainable. First, although Mr. Karhu suggested that VPX’s “sales data would allow the Court to identify members,” the District Court found that “VPX ... makes the bulk of its sales to distributors and retailers and sells directly to consumers relatively infrequently.” Thus, VPX would not have a record of most class members. Further, because a bottle of Meltdown is “a relatively small purchase, ... purchasers are less likely to retain receipts or other records” to show they have purchased Meltdown. Finally, the Court refused to “trust individuals to identify themselves as class members through the submission of affidavits.” Doing so would “deprive VPX of its due process rights to challenge the claims of each putative class *952 member.” “On the other hand, allowing VPX to contest each affidavit would require a series of mini-trials and defeat the purpose of class-action treatment.”
II.
A plaintiff seeking class certification must demonstrate that his claim meets the express requirements of Rule 28(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. See Fed.R.Civ.P. 23(a)(1) — (4). However, courts have also read Rule 23 to contain an implicit, unwritten requirement: that a proposed class be “adequately defined and clearly ascertainable.” Little v. T-Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir.2012) (quotation omitted).
Historically, courts analyzing ascertaina-bility have required something quite narrow. “Ascertainability has traditionally been defined as the existence of a class whose members can be identified by reference to objective criteria in the class definition.” Daniel Luks, Ascertainability in the Third Circuit: Name That Class Member, 82 Fordham L. Rev. 2359, 2369 (2014). The leading class action treatise similarly notes that “courts essentially focus on the question of whether the class can be ascertained by objective criteria.” Newberg on Class Actions § 3.3 (5th ed.); see also McBean v. City of New York, 260 F.R.D. 120, 133 (S.D.N.Y.2009) (“A class is ascertainable when defined by objective criteria that are administratively feasible, without a subjective determination.”). What is more, that treatise cautions that a “court need not know the identity of each class member before certification; ascer-tainability requires only that the court be able to identify class members at some stage of the proceeding.” Newberg on Class Actions § 3.3 (5th ed.).
Our Court’s approval of the class in Fitzpatrick v. General Mills, Inc., 635 F.3d 1279 (11th Cir.2011), exemplifies this approach. There, we approved of a district court’s certification of a class of all purchasers of YoPlus, a probiotic yogurt, in the State of Florida. Id. at 1282-83 (noting that the district court order “conducted a detailed analysis,” was a “scholarly work reflecting careful attention to the requirements of’ Rule 23, and “is sound and in accord with federal and state law”). The district court in Fitzpatrick approved of the class despite the “likely difficulties” of “identifying those consumers that bought Yo-Plus, and of that group, who paid a premium for it,” and “calculating the appropriate compensation for each plaintiff.” Fitzpatrick v. General Mills, Inc., 263 F.R.D. 687, 702 (S.D.Fla.2010). Yogurt consumers, after all, are unlikely to retain receipts proving their purchases. But the District Court insisted that “this difficulty [was] not in itself a sufficient basis to prevent certification of the class.” Id. (quotation marks omitted). . We easily allowed certification of that class without questioning its ascertainability.
III.
The record here indicates that Mr. Ka-rhu could have made a good case for the ascertainably of his proposed class based on consumer affidavits.[1] Many courts have grappled with whether affidavits can be a reliable way to identify class membership. I see these courts looking to at least two factors. First, courts look to the value of the product being challenged in the class action to determine the likelihood that fraudulent claims will be filed. “A *953 simple statement or affidavit may be sufficient where claims are small.” Newberg on Class Actions § 18:54 (4th ed.). Thus, while courts have certified classes of purchasers of low-value items, such as supplements or bottled beverages, based solely on consumer self-identification, see, e.g., McCrary v. Elations Co., LLC, No. EDCV 13-00242 JGB, 2014 WL 1779243, at *7-9 (C.D.Cal. Jan. 13, 2014) (allowing “class members to self-identiiy” that they purchased “an over-the-counter supplement sold in retailers throughout [a] state”), they have been more reluctant to certify classes when the per-class-member claim is larger, see, e.g., In re Hulu Privacy Litig., No. C 11-03764 LB, 2014 WL 2758598, at *16 (N.D.Cal. June 17, 2014) (finding no aseertainability because “at $2,500 per class' member, [the claims] are not small”).
Second, courts have evaluated the “the likelihood of a potential class member being able to accurately identify themselves as a purchaser of the allegedly deceptive product.” Randolph v. J.M. Smucker Co., 303 F.R.D. 679, 689 (S.D.Fla.2014). Where a challenged product is similar to other unchallenged products on the market, consumers may find it hard to know whether they purchased the challenged product. For instance, in Randolph, the Southern District of Florida declined to certify a class of purchasers of certain Crisco oils. The court noted that there were at least nine different Crisco oils on the market, only four of which were the subject of that case. Id. at 687. Beyond that, even among those four oils, the allegedly deceptive label being challenged “was not placed on all four oils uniformly throughout the class period.” Id. The court concluded that “the likelihood that an individual would recall not only which specific kind of oil, but also, when that oil was purchased, complicates identification of the putative class.” Id.; see also Jones v. ConAgra Foods, Inc., No. C 12-01633 CRB, 2014 WL 2702726, at *10 (N.D.Cal. June 13, 2014) (noting a “subjective memory problem” because “there were literally dozens of varieties with different can sizes, ingredients, and labeling over time and some Hunt’s cans included the challenged language, while others included no such language at all” (quotation marks omitted)).
I would combine the reasoning of these courts. Looking to the two factors — (1) the value of each class member’s claim, and (2) the likelihood that potential class members could accurately identify themselves — I conclude that Mr. Karhu likely could have shown aseertainability. First, a bottle of Meltdown costs around $23, a small amount not likely to invite fraudulent claims. Second, Mr. Karhu notes that “Meltdown is a unique product in name, function, and appearance.” This is in contrast to Randolph, where there were a number of versions of Crisco on the market, and only some were being challenged. This record includes no evidence that consumers would be unable to recall whether they are class members. A class composed of purchasers of Meltdown for a certain period of time could therefore be ascertainable.[2]
*954 IV.
Unfortunately for the putative class, Mr. Karhu failed to argue this point in his class-certification motion. As the majority notes, Mr. Karhu, did “not established how the usual problems with [affidavits] would be avoided.” Panel Op. 10. Mr. Karhu, it says, failed to offer a “specific proposal as to how identification via affidavit would successfully operate.” Id. In fact, the District Court apparently considered the self-identification argument “of its own accord” below. Id. at 4. As I’ve said, I believe that self-identification would probably be a sufficient means of ascertaining a class of purchasers of a product like Meltdown. In any event, I read today’s majority opinion narrowly. Mr. Karhu simply did not adequately argue his class was ascertainable before the District Court. Class representatives in future cases may more clearly explain to district courts how affidavits will reliably show class membership based on the two factors I noted above, and I expect that district courts will closely' consider those arguments.
To hold otherwise — rejecting affidavits as a legitimate means of class identification in every case — would make it considerably more difficult for consumers to bring class-action claims on small-dollar products where consumers and companies are unlikely to keep or retain records of purchases. These include most low-cost products typically sold in corner stores or vending machines — products like chewing gum, bottled soft drinks, or cigarettes — all of which are routinely bought with cash. But claims like these are precisely the ones that the mechanism of the class-action device was designed to foster. See Ebin v. Kangadis Food Inc., 297 F.R.D. 561, 567 (S.D.N.Y.2014) (“[T]he class action device, at its very core, is designed for cases like this where a large number of consumers have been defrauded but no one consumer has suffered an injury sufficiently large as to justify bringing an individual lawsuit.”). I would like to see our courts continue to clarify the ascertainability doctrine so as not to eradicate the small-dollar consumer class action.
VI.
The record here has led me to conclude that although Mr. Karhu failed to properly argue that affidavits were sufficient to show ascertainability in his class-certification motions to the District Court, he had a strong case to make. When timely presented, I would hold that affidavits are a sufficient means of identification for purchasers of a cheap, unique product like Meltdown. I concur in the judgment.

. I agree with the majority that Mr. Karhu forfeited his argument that he could identify purchasers of Meltdown through third-party sales records, since he raised this argument for the first time in his motion for reconsideration.

. The cases the majority cites rule on facts different from those here. In Fisher v. Ciba Specialty Chemicals Corp., 238 F.R.D. 273 (S.D.Ala.2006), the court held that a class of landowners was not adequately defined because the class definition included a requirement that each parcel of land not be “income-producing.” Id. at 301. The court rejected the argument that "prospective class members could be counted on to self-select” because the question of whether a parcel of land is "income-producing” cannot be reduced to a simple yes-or-no question. Id. at 302. "Depositions would need to be taken, documents would have to be produced, and argument would need to be heard, ... to assess whether *954 [any lot] was or was not ‘income-producing.’ ” Id. Likewise, in LaBauve v. Olin Corp., 231 F.R.D. 632 (S.D.Ala.2005), the court declined to certify a certain class of fishermen because it thought that "people may respond to publication notice even though they were not fishing in the particular area of concern during the particular temporal interval of concern” since the geographic and temporal scope of the class of fishermen was "so amorphous.” Id. at 683-84. Finally, in Perez v. Metabolife International, Inc., 218 F.R.D. 262 (S.D.Fla.2003), the court was wary of certifying a class of purchasers of an over-the-counter weight loss supplement because the supplement was “only one of several producing containing ephedra, at least two others of which have very similar names.” Id. at 269. Here, the class is clearly defined, and there was little risk of confusion since there was no similar product on the market.